# OPINIONS OF THE JUSTICES.

## OPINIONS OF THE JUSTICES TO THE GOVERNOR.

*Constitutional Law,* Trial by jury. *Practice, Criminal,* Jury of six.

In criminal cases subject to the trial jurisdiction of the District Courts, the right of defendants to trial by jury under art. 12 of the Declaration of Rights of the Massachusetts Constitution can be satisfied by trial before a jury of six rather than a jury of twelve. [878–885] *Quirico,* J., dissenting.

On June 29, 1971, the Justices submitted the following answer to a question propounded to them by the Governor.

To His Excellency, the Governor of the Commonwealth:

The undersigned Justices of the Supreme Judicial Court respectfully submit their answer to the question set forth in your request of June 4, 1971. The question arises in connection with 1971 House Doc. No. 5476, Appendix C, a bill entitled "An Act eliminating trials de novo in certain cases."

The bill is summarized in your request for our opinion as follows: At "present . . . [D]istrict [C]ourts have . . . jurisdiction, concurrent with the Superior Court, of . . . [most] misdemeanors . . . and of all felonies punishable by imprisonment in a state prison for not more than five years. G. L. c. 218, § 26 [as amended through St. 1969, c. 496]. The maximum sentence which a [D]istrict [C]ourt may impose is two and one half years in a house of correction [see G. L. (Ter. Ed.) c. 279, § 23]. In no case may it sentence to a state prison. G. L. c. 218, § 27. The bill makes no changes in these aspects of the criminal jurisdiction or sentencing power of the [D]istrict [C]ourts.

"The bill does, however, alter procedures in criminal cases within the trial jurisdiction of the [D]istrict [C]ourts

as they relate to trial by jury. Under the present law, [D]istrict [C]ourt trial in the first instance takes place before a judge. . . . A convicted defendant may thereafter appeal as of right [G. L. c. 278, § 18, as amended through St. 1955, c. 131, § 8] to the Superior Court, and obtain a ·trial *de novo* before a jury of twelve. G. L. c. 212, § 6; c. 278, § 2. Alternatively, in certain counties, a defendant convicted of a misdemeanor may elect trial *de novo* before· a jury of six in the [D]istrict [C]ourts. St. 1964, c. 143; St. 1970, c. 428.

"The bill would eliminate appeal to the Superior Court, and trial *de novo* before a jury of twelve [or otherwise]. Instead, in the case of misdemeanors, the convicted defendant would have his right of jury trial satisfied by . . . [a] trial *de novo* [on appeal] before a jury of six in the [D]istrict [C]ourts. In the case of felonies within the trial jurisdiction of the [D]istrict [C]ourts, the defendant would elect, before initial trial, to claim or waive trial by jury; and in the former case, trial would be held in the first instance before a [D]istrict [C]ourt judge sitting with a six-man jury. . . . Therefore, as to both misdemeanors and felonies where the [D]istrict [C]ourt has jurisdiction to try the defendant, he would have no opportunity for trial before a jury of twelve [in the Superior Court]."

Your request states that you are "in doubt . . . whether the provisions of this bill providing for six-man juries comply with" art. 12 of the Declaration of Rights of the Constitution of the Commonwealth. You therefore seek our opinion.

The question is:

"In criminal cases subject to trial in the [D]istrict [C]ourts, where the defendant has a constitutional right to jury trial, can this right be satisfied by trial before a jury of six rather than a jury of twelve?"

In response to our invitation to interested persons to file briefs not later than June 24, 1971, briefs or memoranda

were filed by or in behalf of the Attorney General; Massachusetts District Attorneys' Association; Mr. George G. Burke, District Attorney, Norfolk County; Massachusetts Defenders Committee; and Mr. Lawrence D. Shubow. The Institute of Judicial Administration, Inc. and others have helpfully placed at our disposal material on the use in other States of juries of less than twelve members.

1. Because of the recent case of *Williams* v. *Florida,* 399 U. S. 78, 86–103, no question now arises under the Sixth Amendment to the Constitution of the United States with respect to the use of a six-man jury in State court criminal cases in which a defendant is entitled to a jury trial. In *Duncan* v. *Louisiana,* 391 U. S. 145, 149, it had been held that the Sixth and Fourteenth Amendments, read together, guarantee (see 399 U. S. 78, 86) "a right to trial by jury, in all [State] criminal cases which — were they to be tried in a federal court — would come within the Sixth Amendment's" protection. Essentially, this means that the defendant, in all trials for offences punishable by imprisonment for six months or more, may insist upon a jury. See *Baldwin* v. *New York,* 399 U. S. 66.

The *Williams* case (399 U. S. 78, 86–98) traced in outline (with references to the relevant authorities) the origins of the general common law practice, prior to the Revolution, of having trial by a twelve-man petit jury. The Supreme Court in 1970 decided that it was not compelled, either by history or by precedent, to decide that the Sixth Amendment adopted and embodied the pre-Revolutionary practice. The court said (at pp. 102–103), "We conclude, in short, as we began: the fact that the jury at common law was composed of precisely 12 is *a historical accident, unnecessary to effect the purposes of the jury system* and wholly without significance 'except to mystics.' . . . To read the Sixth Amendment as forever codifying a feature [of common law jury trial practice] so incidental to the real purpose of the Amendment is to ascribe a blind formalism to the Framers [of the Constitution] which would require considerably more evidence than we have been able to dis-

cover in the history and language of the Constitution or in the reasoning of our past decisions" (emphasis supplied)

Mr. Justice White, speaking for the court in the *Williams* case, arrived at this conclusion by the following reasoning (at pp. 98–102): "We do not pretend to be able to divine precisely what the word 'jury' imported to the Framers, the First Congress, or the States in 1789. It may well be that the usual expectation was that the jury would consist of 12 . . . . But there is absolutely no indication in 'the intent of the Framers' of an explicit decision to equate the constitutional and [the] common law characteristics of the jury. . . . The relevant inquiry . . . must be the function that the particular feature [of a common law jury] performs and its relation to the purposes of the jury trial. Measured by this standard, the 12-man requirement cannot be regarded as an indispensable component of the Sixth Amendment." He went on to say, "The purpose of the jury trial . . . is to prevent oppression by the Government. . . . [T]he essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation . . . [which] results from that group's determination of guilt or innocence. The performance of this role is not a function of the particular number of the body . . . [which] makes up the jury. To be sure, the number should probably be large enough to promote group deliberation, free from outside attempts at intimidation, and to provide a fair possibility for obtaining a representative cross section of the community. But we find little reason to think that these goals are . . . less likely to be achieved when the jury numbers six, than when it numbers 12 — particularly if the requirement of unanimity is retained. And, certainly the reliability of the jury as a factfinder hardly seems likely to be a function of its size."

Mr. Justice White (pp. 101–102) also discussed whether different results are likely to follow the use of a six-man jury instead of a twelve-man jury. He concluded (p. 101)

that "neither currently available evidence nor theory suggests that the 12-man jury is necessarily more advantageous to the defendant than a jury composed of fewer members" and (p. 102) that "the concern that the cross-section will be significantly diminished if the jury is decreased in size . . . seems . . . unrealistic."

2. This reasoning of Mr. Justice White applies with essentially equal force to art. 12 of the Declaration of Rights found in the Constitution of the Commonwealth. Article 12 reads in part, "And the legislature shall not make any law, that shall subject any person to a capital or infamous punishment, excepting for the government of the army and navy, without trial by jury." This provision contains no express reference to the number of persons to serve on a petit jury.

Doubtless, prior to the Revolution, a petit jury usually meant a jury of twelve. An early indication of the customary practice is found in Laws and Liberties of Massachusetts (1648), Huntington Library Reprint (1929), p. 32. There a marginal note, "Tryall for life & by 12 mē," appears next to par. 2 under the heading (p. 31) "Juries, Jurors." The paragraph itself, however, is in general terms (with no mention of the number of jurors), "2 Nor shall any tryall passe upon any for life or bannishment but by a special Jurie so summoned for that purpose, or by the General Court." A specification of twelve jurors does appear in the Province Laws 1692–1693, c. 11, arts. 6 and 7 (see also c. 9, § 2). These statutes, however, were "disallowed" by the Privy Council on August 22, 1695. See for later general enactments, Province Laws 1699–1700, cc. 1–5, inclusive. See also Charters and General Laws of the Colony and Province, c. 59 [1699], pp. 326–328; Grinnell, "To What Extent is the Right to Jury Trial Optional in Criminal Cases in Massachusetts?" 8 Mass. L. Q. (No. 5) 7. The provisions of what is now art. 12 of the Declaration of Rights, in the drafts reprinted in the Journal of the Constitutional Convention (1779–1780), are expressed only in general terms, without specification of any number of jurors

required.  See pp. 38, 150–151, 194–195 (arts. 12, 14), 225.
See also John Adams, Works, vol. 4, pp. 219, 226.

As the Supreme Court held in *Williams* v. *Florida* (399
U. S. 78) with respect to the Sixth Amendment, it is ap-
parent that art. 12 of the Declaration of Rights was de-
signed to preserve for the future the fundamental safeguards
of trial by jury which existed prior to the Revolution.  There
is no indication, however, that the authors of art. 12 wished
to freeze for all time by constitutional mandate the details
of all then existing practice, or that they gave any significant
attention to the particular number of jurors.  Although
Chief Justice Chapman said in *Commonwealth* v. *Dorsey*,
103 Mass. 412, 418, "Undoubtedly the Constitution con-
templated a jury of twelve men, who should be good and
impartial," this statement and other statements like it (in
later cases) appear to be nothing more than a reference to
what at common law was certainly the prevailing practice.
In the *Dorsey* case itself, this court sustained a material
change in the practice with respect to peremptory chal-
lenges, and went on to say (p. 419), "If the framers of the
Constitution had intended to prohibit the legislature from
conferring a right of peremptory challenge on the govern-
ment, their knowledge of the institution of trial by jury
would have induced them to express that intent.  Many
changes have been made by legislative acts in respect to
the qualifications of jurors, the methods of selecting and
summoning them, and of forming a panel, which differ
materially from the ancient practice, and it has not been sup-
posed that the Constitution was violated by such provisions."

In an even earlier case, see *Jones* v. *Robbins*, 8 Gray, 329
343–344, Chief Justice Shaw had recognized the true nature
of State constitutional protections like those in the Declara-
tion of Rights.  He said, "It is well understood that, prior
to and during the American Revolution, and especially . . .
when new constitutions for the states were to be formed, it
was desirable that the form of government, and the powers
vested in its different departments, should be expressed
and limited, in written constitutions, being fundamental

laws, emanating from the people, and unalterable, but by the same original authority; and for the better security of the rights of life, liberty and property, it was deemed essential that the *fundamental principles of free government should be set down in a few plain, clear and intelligible propositions*, for the better guidance and control, both of legislators and magistrates. . . . Most of the state constitutions did contain these declarations, more or less detailed and explicit; but the general purpose was to assert and maintain the *great rights of English subjects, as they had been maintained by the ancient laws, and the actual enjoyment of civil rights under them"* (emphasis supplied).

A similar view has been expressed in more recent decisions. See *Bothwell* v. *Boston Elev. Ry.* 215 Mass. 467, 473, where this court (per Rugg, C.J.) said, "The trial by jury preserved by our Constitution is the common law trial by jury *in its essential characteristics* as known and understood at the time the Constitution was adopted. . . . It did not mean to preserve the minor details or unessential formalities of the trial by jury as it then existed either in England or here" (emphasis supplied). See also *Opinion of the Justices*, 237 Mass. 591, 596. In that opinion, the Justices advised the House of Representatives (see p. 598) that the General Court had constitutional power (see p. 592) to enact legislation making women liable to jury duty, despite the circumstance that prior to the adoption of the Nineteenth Amendment to the Constitution of the United States, "women could not serve . . . under our Constitution and laws" (see pp. 593–594). Cf. *Commonwealth* v. *Welosky*, 276 Mass. 398, 401–416.

Comparable views were expressed in *Commonwealth* v. *Bellino*, 320 Mass. 635, 638, where the court considered the procedure authorized by G. L. c. 234, § 26B, as appearing in St. 1945, c. 428, § 1, of empanelling fourteen jurors in certain criminal trials. This court (per Qua, J., at pp. 639–640), in discussing "the provisions of the Declaration of Rights for the preservation of trial by jury," said, "The substance of the right to be tried by jury consists of those

elements in that method of trial *which tend to protect the citizen against arbitrary power and to ensure to him that issues of fact shall be determined by the composite judgment of a fairly numerous and representative body of impartial residents of the county selected at large rather than by the judgment of one or of a small number of single individuals* who may be subject to peculiar prejudices or whose station and personal experiences in life may have failed to provide them with sufficient understanding of the conditions and circumstances in which the parties acted. Whatever tends in any appreciable degree to impair the essentials of the right must be struck down. But it has always been understood that the constitutional declaration of the right to trial by jury, like other constitutional declarations of right, was the enunciation of a *broad, living principle* capable of reasonable adaptation to a constantly changing society and not a barren congealing into rigidity of existing forms, which, with the alteration of time and circumstance, might even become clogs upon the exercise of the right itself" (emphasis supplied). Although (at p. 640) the court noted that, under the statute, the "verdict is still rendered by twelve men acting unanimously," this wholly accurate statement concerning the statute then under study by the court does not appear to us to contain any suggestion that twelve jurors were essential to meet the requirements of art. 12 of the Declaration of Rights. Similarly, references in other cases to twelve jurors seem to us to have been purely incidental discussion which did not deal directly with any issue then raised before the court. See *Commonwealth* v. *Welosky*, 276 Mass. 398, 401; *Gallo* v. *Commonwealth*, 343 Mass. 397, 399 (discussion of statute permitting waiver of statutory provision as to twelve jurors). See also *Commonwealth* v. *Dailey*, 12 Cush. 80, 81 (consent to withdrawal of a juror); *Commonwealth* v. *Ricard*, 355 Mass. 509, 512 ("A fair jury is one that represents a cross section of community concepts"). See as to statutes allowing six-man juries in certain instances not raising the present constitutional issue, St. 1852, c. 314,

§ 3; St. 1964, cc. 629, 656–661; St. 1969, c. 253; St. 1970, c. 428.

Doubtless, different views may be entertained about some language in our cases concerning the tradition that petit juries are to be composed of twelve men. Cf. e.g. Moss, "The Twelve Member Jury in Massachusetts — Can it be Reduced?" 56 Mass. L. Q. 65. Examination, however, of the authorities already mentioned convinces us that art. 12 of the Declaration of Rights was designed to protect the fundamentals and substance of the ancient right and not merely its more formal and less essential attributes. We agree with the analysis made by Mr. Justice White in *Williams* v. *Florida*, 399 U. S. 78, 86–103, and adopt his reasoning (already quoted) as applicable to art. 12.

We recognize, of course, that the present bill has no effect either upon trials for the more serious crimes or in any case where the defendant in fact may be exposed to a State prison sentence. This circumstance probably means (see art. 12, last sentence) that no offence involving "infamous punishment" is dealt with by the bill. See *Jones* v. *Robbins*, 8 Gray, 329, 347–349 (sentence to the State prison as involving "infamous punishment"); *Commonwealth* v. *Horregan*, 127 Mass. 450, 451. See also *DeGolyer* v. *Commonwealth*, 314 Mass. 626, 627–628. No question is presented to us concerning the extent to which, under art. 12, the Legislature may dispense with jury trials entirely in certain criminal matters, as, for example, in trials for petty offences or those punishable by imprisonment for less than six months. See *Baldwin* v. *New York*, 399 U. S. 66, 72–74; *Williams* v. *Florida*, 399 U. S. 78, 119–129, 138–143 (separate opinion of Mr. Justice Harlan, and appendix).

3. We answer the question, "Yes."

G. Joseph Tauro.
John V. Spalding.
R. Ammi Cutter.
Jacob J. Spiegel.
Paul C. Reardon.
Robert Braucher.

I am unable to agree with the opinion of the majority of the Justices that a defendant in a criminal case which is within the jurisdiction of a District Court may be compelled, without his prior consent, to accept trial by a jury of six persons as fulfillment of his constitutional right under art. 12 of the Declaration of Rights to a trial by jury. Although art. 12 does not fix the number of jurors required for any trial, its language must be construed in the light of the history of trial by jury to the time our Constitution was adopted in 1780. It must also be considered with the benefit of knowledge of the historical backdrop against which the constitutional language was chosen. The Declaration of Independence listed as one of the grievances against the King of Great Britain the fact that he had given his assent to "acts of pretended Legislation: . . . For depriving us in many cases, of the benefits of Trial by Jury." Our Constitution was drafted less than four years thereafter by John Adams, one of the signers of the Declaration.

The size of the jury at common law had become generally fixed at twelve sometime in the Fourteenth Century. *Williams* v. *Florida*, 399 U. S. 78, 89. It had continued at that number for the next four centuries to the adoption of our Constitution in 1780. It is therefore reasonable to conclude that by 1780 trial by jury was commonly understood and accepted to mean trial by a jury of twelve persons.

In the period of almost two centuries since 1780 we have never compelled a defendant in a criminal case or a litigant in a civil case who was entitled to a trial by jury to go to trial before a jury of less than twelve persons. Our relatively recent statutes authorizing trials of certain cases by juries of six persons have all required the consent of the defendants in criminal cases and of all litigants in civil cases to be tried before such a jury. St. 1966, c. 609, and statutes amended thereby. St. 1969, c. 253. St. 1970, cc. 88, and statutes amended thereby, 428, 551, and statute amended thereby, and 639. Although we have sanctioned some changes in some aspects of trial by jury in opinions cited by the majority of the Justices, we have never been asked to

approve a compulsory limitation of a jury trial to a jury of less than twelve persons.

We are thus able to look back on a span of almost six centuries when trial by jury has meant trial by a jury of twelve unless the persons entitled to such a trial agreed otherwise. Even if it be true, as stated in *Williams* v. *Florida*, 399 U. S. 78, 102–103, that "the fact that the jury at common law was composed of precisely 12 is a historical accident," the adherence to that number in a usage continuing for six centuries cannot be so described. It is my opinion that when the framers of our Constitution used the words "judgment of his peers" and "trial by jury" in art. 12 they intended the words to mean a trial by a jury of twelve persons which was the only kind of jury then known and used. It is my further opinion that any reduction in that number on a compulsory basis may be accomplished only by an amendment to our Constitution, and not by legislation. The reduction in the size of a jury for the trial of criminal cases, even though limited to misdemeanors, without the consent of an accused, is to my mind a change so fundamental in nature and effect upon the accused that it should be accomplished by a change in the Constitution in the guaranties of which "are found the constitutional liberty of the individual and the foundation for the regulated order and general welfare of the community." *Loring* v. *Young*, 239 Mass. 349, 376.

FRANCIS J. QUIRICO.