COMMONWEALTH *vs.* WILBERT HAYWOOD.

Suffolk. December 6, 1978. — April 5, 1979.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Constitutional Law,* Confrontation of witnesses, Trial by jury. *Witness,* Bias, Impeachment. *Evidence,* Impeachment of witness, Arrest records, Other offense. *Practice, Criminal,* Directed verdict, Capital case. *Homicide. Jury and Jurors,* Substitution of alternate juror.

At a criminal trial, the judge did not abuse his discretion in excluding evidence of a witness's arrest record offered to show that the witness was motivated to cooperate with the police in order to gain favorable treatment in the disposition of unrelated charges pending against him where the arrests occurred after the witness had given statements to the police with respect to the defendant's criminal actions and those statements did not differ in any material respect from his trial testimony. [758-763]

At a murder trial, the judge did not err in allowing a witness to testify, in the course of describing his relationship with the defendant on redirect examination, that he had purchased marihuana from the defendant on more than one occasion where the relationship be-

tween the witness and the defendant was explored at length by
defense counsel on cross-examination and where the judge's strong
cautionary instructions were more than adequate to protect the
defendant's rights. [763-765]
There was no merit to the defendant's contention that eyewitness
testimony at his murder trial was incredible as matter of law. [765]
The provisions of G. L. c. 234, § 26B, as construed and applied by a
judge who, after finding that a juror had become ill during delibera-
tions, ordered an alternate's name to be drawn by lot and emphati-
cally instructed the jury to begin its deliberations anew, did not
unconstitutionally deprive the defendant of his right to trial by
jury. [765-770]
Where there was evidence at a murder trial that the defendant ob-
tained a knife and after the passage of time sought out, confronted
and stabbed an unarmed victim, considerations of the defendant's
social and educational background and the absence of a prior adult
criminal record were insufficient to warrant a reduction of a verdict
of murder under G. L. c. 278, § 33E. [771]

INDICTMENT found and returned in the Superior Court
on December 17, 1976.

The case was tried before *Morse*, J.

The Supreme Judicial Court, on its own initiative, or-
dered direct appellate review.

*Monroe L. Inker* for the defendant.

*Daniel V. Mullane*, Assistant District Attorney, for the
Commonwealth.

ABRAMS, J. Wilbert Haywood appeals from his convic-
tion of the murder in the second degree of George Antho-
ny Willis. G. L. c. 278, §§ 33A-33G. Haywood claims that
reversal of his conviction is required because: (1) his con-
stitutional right to cross-examine adverse witnesses on
the issue of bias was infringed; (2) evidence of an indepen-
dent crime was erroneously admitted; (3) there was insuf-
ficient credible evidence to warrant his conviction; and
(4) the substitution of an alternate juror for a juror who
became ill violated his constitutional right to a jury trial.[1]
Haywood also seeks relief under G. L. c. 278, § 33E, claim-

---

[1] Assignments of error not briefed are deemed waived. *Common-
wealth* v. *Watkins, ante* 385 n.1 (1979). *Commonwealth* v. *Kleciak,* 350
Mass. 679, 681 (1966).

ing that he should have a new trial or, alternatively, we should reduce the verdict to manslaughter. We find no error and conclude that we should not exercise our authority under G. L. c. 278, § 33E.

We summarize the facts. At approximately 8:00 P.M. on November 13, 1976, Haywood was seen in front of a store on Marcella Street in Boston. At the same time, Willis was standing with a group of friends on the porch of a house on the opposite side of the street.

Willis attempted to throw an empty soft drink bottle into a vacant lot across Marcella Street from the house. The bottle did not reach the lot, and shattered against the curb, landing approximately twenty feet from Haywood.

Haywood then turned to go into the store. As he did so, he met Harvey Johnson, who was leaving the store. Haywood asked Johnson whether he had a knife. Johnson said that he did not, and walked away.

About thirty minutes later, Willis decided to accompany one David McIntyre to McIntyre's home. The two men walked along Marcella Street and turned onto Thornton Street. As they proceeded along Thornton Street, Haywood came up behind them and asked Willis who threw the bottle. Willis responded, "I don't know."

Haywood then pulled out a knife, stabbed Willis and began chasing McIntyre along Thornton Street. McIntyre turned and talked with Haywood, whom he knew well. As a result, Haywood lowered the knife and left the scene.

After the stabbing, Willis ran back to Marcella Street where he collapsed. Police and an ambulance were called. Willis was taken to a nearby hospital where he died as a result of his stab wound.

Haywood was arrested by police at his home later the same evening. He told police that he had been in front of the store at the time the bottle was thrown. However, Haywood said that after the bottle-throwing incident, he went directly home. Haywood denied encountering Willis

and McIntyre on Thornton Street, and said that he did not stab Willis.

The jury found Haywood guilty of murder in the second degree. The judge sentenced him to life imprisonment.

1. *Bias and the Restriction of Cross-examination.*

At trial, the defendant sought to introduce McIntyre's arrest record[2] to show that McIntyre was motivated to cooperate with the police in order to gain favorable treatment in the disposition of unrelated charges then pending against him. The issue of McIntyre's arrest record was raised by the defendant during a voir dire on an unrelated issue,[3] at which Haywood showed that McIntyre was first arrested on December 16, 1976, and charged with operating a motor vehicle without a license, the unauthorized use of a motor vehicle, and possession of burglar's tools. The charge of operating a motor vehicle without a license was filed; the other charges were continued without findings to December 28, 1977.

On June 17, 1977, McIntyre again was arrested. He was charged with armed robbery and assault and battery by means of a dangerous weapon. These charges were pending at the time of the defendant's trial. Prior to any of these arrests McIntyre had made statements to police on November 13 and November 16, 1976, describing the stabbing.

---

[2] The defendant also sought unsuccessfully to introduce the probation records of two of the Commonwealth's other witnesses, Cathy Pritchard and Troy Willis. However, he does not assign as error the exclusion of these records. See G. L. c. 278, § 33D. See also *Commonwealth* v. *Wallace*, 356 Mass. 92, 97 (1969). These alleged errors are, therefore, deemed waived. Nevertheless, pursuant to G. L. c. 278, § 33E, we have examined the record and concluded that there was no miscarriage of justice in the exclusion of this evidence. The testimony of Cathy Pritchard and Troy Willis was not crucial to the Commonwealth's case and was corroborated by other witnesses.

[3] The voir dire was held initially to examine the extent to which McIntyre's senses were affected by marihuana use on the night of the stabbing. See *infra* at 763-764.

McIntyre testified at the voir dire that he was under the impression that his 1976 arrests had already been "disposed of." He also denied that he had ever spoken about his armed robbery arrest with anyone connected with the defendant's case.

The judge found that McIntyre's arrest record was irrelevant to the question whether McIntyre was motivated by "bias or prejudice or promise of reward."[4] Thus the judge ruled that evidence of McIntyre's arrest record was not admissible to impeach him.

On appeal, Haywood claims that McIntyre's arrest record "permitted the inference that McIntyre felt he was free to commit crimes himself so long as the Commonwealth needed him to testify against [the] defendant." Haywood argues that "if the jury had had this evidence, they might have viewed McIntyre as being in the nature of an informant on whom the government regularly depends; and who used this dependency to shield himself from the consequences of his criminal conduct." Therefore, the defendant concludes that the judge's ruling deprived him of his constitutional right to confront the witnesses against him. We disagree.

Arrest or indictment alone is insufficient for general impeachment purposes. See G. L. c. 233, § 21. See also *Michelson* v. *United States*, 335 U.S. 469, 482 (1948) ("Ar-

---

[4] The defendant does not claim that the Commonwealth made any overtures or promises to McIntyre in return for his testimony. The Commonwealth would have been required to reveal any such "understanding or agreement" and the defendant would have been entitled to introduce it at trial. See *Giglio* v. *United States*, 405 U.S. 150, 154-155 (1972); *Commonwealth* v. *Michel*, 367 Mass. 454, 459-460 (1975). But cf. *Mastrian* v. *McManus*, 554 F.2d 813, 823 (8th Cir.), cert. denied sub nom. *Mastrian* v. *Wood*, 433 U.S. 913 (1977) (mere general expectation of leniency need not be revealed to jury absent express or implied promise). The assistant district attorney confirmed that there were no promises made to McIntyre, and the defendant does not claim otherwise. Of course, if the prosecution withheld such evidence, a new trial would be required. See *Commonwealth* v. *Ellison*, 376 Mass. 1, 22 (1978) (withholding "evidence which . . . challenges the credibility of a key prosecution witness" is impermissible).

rest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness"); *United States* v. *Ling,* 581 F.2d 1118, 1121 (4th Cir. 1978); *United States* v. *Amabile,* 395 F.2d 47, 50-51 (7th Cir. 1968), vacated on other grounds sub nom. *Giordano* v. *United States,* 394 U.S. 310 (1969), aff'd on remand, 432 F.2d 1115 (7th Cir. 1970), cert. denied, 401 U.S. 924 (1971). See generally W. B. Leach & P. J. Liacos, Massachusetts Evidence 123 (4th ed. 1967).

On the other hand, it is well established that a criminal defendant is "entitled, as of right, to reasonable cross-examination of a witness for the purpose of showing bias, particularly where that witness may have a motivation to seek favor with the government." *Commonwealth* v. *Dougan, ante* 303, 310 (1979). *Commonwealth* v. *Ahearn,* 370 Mass. 283, 287 (1976). *Commonwealth* v. *Graziano,* 368 Mass. 325, 330 (1975). See *Commonwealth* v. *Marcellino,* 271 Mass. 325, 326-327 (1930). See generally W. B. Leach & P. J. Liacos, Massachusetts Evidence 120-121 (4th ed. 1967). A defendant has the *right* to bring to the jury's attention any "circumstance which may materially affect" the testimony of an adverse witness which might lead the jury to find that the witness is under an "influence to prevaricate." *Commonwealth* v. *Marcellino, supra* at 327, quoting from *Day* v. *Stickney,* 14 Allen 255, 258 (1867). See *United States* v. *Garrett,* 542 F.2d 23, 26 (6th Cir. 1976) ("there is a difference between general credibility and answers which might possibly establish untruthfulness with respect to the specific events of the crime charged"). See also *Hart* v. *United States,* 565 F.2d 360, 362 (5th Cir. 1978); *United States* v. *DeLeon,* 498 F.2d 1327, 1332-1333 (7th Cir. 1974).

Thus, if evidence bears directly on the issue of bias, any claim of confidentiality as to juvenile or criminal records cannot prevail. See *Davis* v. *Alaska,* 415 U.S. 308, 320 (1974); *Commonwealth* v. *Ferrara,* 368 Mass. 182, 189-190 (1975). This rationale may extend to arrest records where charges are pending against the witness at the time of his

testimony. Cf. *Commonwealth* v. *Dougan, ante* 303, 309-310 (1979).

However, neither *Davis* nor *Ferrara* holds that a defendant may introduce in evidence the arrest or probation records of adverse witnesses in all circumstances. See *Davis* v. *Alaska, supra* at 321 (Stewart, J., concurring); *Commonwealth* v. *Ferrara, supra* at 186-187. See also *Commonwealth* v. *Santos*, 376 Mass. 920, 924 (1978); *Mills* v. *Estelle*, 552 F.2d 119, 122 (5th Cir.), cert. denied, 434 U.S. 871 (1977). Therefore, the judge could make an appraisal of the materiality of the testimony sought in light of Haywood's right "to show specific bias or motive to prevaricate on the part of the government witness." *Commonwealth* v. *Santos, supra* at 924.

On the night of the stabbing, McIntyre went to the hospital, identified Haywood to police as the assailant, and volunteered to take police to an area where he thought Haywood lived. Three days later, McIntyre gave a statement to police describing events on the night of the stabbing.

At the time McIntyre gave his initial statements to police, he had no arrest record. The first entry on McIntyre's arrest record[5] is dated December 16, 1976, over a month *after* McIntyre made his initial statements to police.

The defendant asserts that the fact that McIntyre's own troubles with police commenced after the crime at issue here should not be dispositive. The defendant maintains that the critical date for determining whether McIntyre's arrest record is relevant on the issue of bias is the date of McIntyre's testimony at trial. The defendant argues that if there are charges pending against a witness, the witness has reason to be susceptible to official pressure at the time of his testimony and thus the arrest record is relevant to show bias. Cf. *United States* v. *Garrett*, 542 F.2d 23, 25-27 (6th Cir. 1976).

---

[5] McIntyre's arrest record was marked for identification at trial.

The defendant's argument would be persuasive if he were able to show that McIntyre's testimony changed once he became susceptible to official pressure.[6] However, McIntyre first identified Haywood to police on November 13, 1976. He made a more formal statement to police identifying Haywood on November 16, 1976. Next McIntyre testified before the grand jury in mid-December. He then testified at the defendant's first trial, which ended in a mistrial on June 6, 1977. Finally, McIntyre testified at the defendant's second trial in October, 1977. The record is devoid of any indication that McIntyre's testimony concerning the stabbing differed in any material respect from any of the earlier statements.

Since McIntyre had made at least two, and possibly three statements about the killing prior to his initial arrest by police,[7] and since the defendant at no point demonstrated that the various statements concerning the stabbing were inconsistent in any material respect,[8] the judge was faced with the issue of whether the record of arrest was collateral to the issue of bias. If the arrest record were admitted, the Commonwealth then would be

[6] This issue did not arise in *Davis* or *Ferrara* because in each case the witness was susceptible to official pressure from the time of his initial contact with police concerning the crime. Thus in those cases the witness's initial statement to police would be as suspect as any later testimony. See *Davis* v. *Alaska*, 415 U.S. 308, 311 (1974); *Commonwealth* v. *Ferrara*, 368 Mass. 182, 188-189 (1975). See also *Commonwealth* v. *Graziano*, 368 Mass. 325, 330 (1975). See generally *United States* v. *Croucher*, 532 F.2d 1042, 1044-1046 (5th Cir. 1976); *United States* v. *DeLeon*, 498 F.2d 1327, 1332-1333 (7th Cir. 1974).

[7] The record does not indicate whether McIntyre's first arrest occurred before or after his testimony before the grand jury.

[8] At trial, the defendant cross-examined McIntyre extensively concerning his earlier statements. While this cross-examination reveals minor inconsistencies with respect to McIntyre's status as a student and his employment history, there was no evidence of any inconsistency in McIntyre's description of the events surrounding the stabbing. The transcripts of McIntyre's prior statements are not before us, and the defendant did not point out, either to the judge or to us, any material changes in McIntyre's testimony concerning the stabbing.

entitled to introduce McIntyre's prior statements concerning the stabbing to show that earlier statements were made when McIntyre was free from any official pressures and that those earlier statements were in accord with McIntyre's testimony at trial. See *Commonwealth* v. *Giacomazza*, 311 Mass. 456, 469 (1942); *Commonwealth* v. *Tucker*, 189 Mass. 457, 481 (1905); *Commonwealth* v. *Jenkins*, 10 Gray 485, 489 (1858). Cf. *Commonwealth* v. *Lacy*, 371 Mass. 363, 370 (1976); *Commonwealth* v. *Pickles*, 364 Mass. 395, 400-401 (1973). See also 3 J. Weinstein & M. Berger, Evidence § 607[08], at 76-77 (1978) ("where an attempt has been made to show that the witness is testifying under the influence of a motive to falsify, evidence of prior consistent statements made *before* the existence of the alleged motive is admitted by all American jurisdictions ... to rebut the inference that the testimony was induced by the motive").

The judge reasoned that, before the subsequent arrest record had to be admitted as a matter of law, he could require some showing in a voir dire that McIntyre's trial testimony was motivated by partiality for the Commonwealth or hostility toward the defendant.[9] Since the voir dire failed to show bias or any change in McIntyre's account of the stabbing, the judge concluded that McIntyre's subsequent arrest record was not probative of bias, and therefore need not be admitted.

We do not fault the judge's reasoning. In these circumstances we think that a judge is entitled to balance the conflicting interests and to conclude, as a matter of judicial discretion, that subsequent arrest records might be kept from the jury.

2. *Defendant's Sales of Marihuana to a Witness.*

At trial, McIntyre claimed to know Haywood well. Haywood's counsel cross-examined McIntyre as to the nature

---

[9] The defendant appears to have adopted these factors as a definition of bias. See *Commonwealth* v. *Marcellino*, 271 Mass. 325, 327 (1930). See generally McCormick, Evidence § 40 (2d ed. 1972).

of McIntyre's relationship with Haywood. Extensive inquiries were made as to how often the two met, how often they socialized with one another, and whether McIntyre knew where Haywood lived.

After the defendant's cross-examination of McIntyre, the Commonwealth sought to have McIntyre describe his entire relationship with Haywood. In the course of describing his relationship with Haywood, McIntyre testified that he had purchased some marihuana from Haywood on more than one occasion.

Haywood claims that this permitted the Commonwealth to show the commission of another, unrelated independent crime to prove that he committed the murder, and thus was error. However, "[t]he Commonwealth had the right to have the entire relationship between [the witness] and the defendant brought to the attention of the jury, and the fact that the evidence thereon may have indicated that the defendant committed another crime did not make it inadmissible. *Commonwealth* v. *Madeiros*, 255 Mass. 304, 314 [1926]. *Commonwealth* v. *Mercier*, 257 Mass. 353, 368 [1926]. *Commonwealth* v. *Geagan*, 339 Mass. 487, 512 [1959]. *Commonwealth* v. *White*, 353 Mass. 409, 420 [1967]." *Commonwealth* v. *Redmond*, 357 Mass. 333, 338 (1970). See *Commonwealth* v. *Deschamps*, 1 Mass. App. Ct. 1, 3 (1972), quoting from 2 J. Wigmore, Evidence § 416 (3d ed. 1940).

In this case, the Commonwealth offered the evidence as to the entire relationship between Haywood and McIntyre only after the issue was explored at length by the defendant in cross-examination. Immediately after the testimony, the judge instructed the jury that McIntyre's statements were to be considered only in determining the relationship between McIntyre and the defendant. The judge said: "They [the statements] are not—I repeat—not any evidence to show that it was more likely or less likely that this defendant did or did not commit the crime charged."[10] The judge's strong cautionary instructions

---

[10] The judge gave a second cautionary instruction on this issue as

were more than adequate to protect the defendant's rights. See *Commonwealth* v. *Mercier,* 257 Mass. 353, 368 (1926). Cf. *Commonwealth* v. *Cepulonis,* 374 Mass. 487, 498-499 (1978).

3. *Directed Verdict.*

The defendant claims that the judge improperly denied his motion for a directed verdict of not guilty. The defendant does not argue that the Commonwealth presented insufficient evidence to warrant the submission of the case to the jury. Rather, he maintains that McIntyre's eyewitness testimony was to "bizarre, unlikely events" and had been so "thoroughly impeached" that it was "incredible as a matter of law." We rejected a virtually identical argument in *Commonwealth* v. *Hoffer,* 375 Mass. 369 (1978), where we said that "[c]redibility is a question for the jury to decide. Once sufficient evidence is presented to warrant submission of the charges to the jury, it is for the jury alone to determine what weight will be accorded to the evidence." *Id.* at 377. *Commonwealth* v. *McCauley,* 355 Mass. 554, 560 (1969). See *Commonwealth* v. *Amazeen,* 375 Mass. 73, 79-81 (1978); *Commonwealth* v. *Kelley,* 370 Mass. 147, 149-150 (1976). There was no error.

4. *Substitution of the Alternate Juror.*

The defendant claims that the judge erred in replacing a juror who become ill during deliberations with one of the alternate jurors. See G. L. c. 234, § 26B.[11] He argues that G. L. c. 234, § 26B, as applied by the judge, violates the defendant's right to trial by jury.

---

part of his charge to the jury. Haywood does not assign as error either instruction.

[11] General Laws c. 234, § 26B, as appearing in St. 1967, c. 285, provides, in pertinent part, that: "If, at any time after the final submission of the case by the court to the jury and before the jury has agreed on a verdict, a juror dies, or becomes ill, or is unable to perform his duty for any other good cause shown to the court, the court may order him to be discharged and direct the clerk to place the names of all of the remaining alternate jurors in a box and draw the name of an alternate, who shall then take the place of the discharged juror on the jury, which shall then renew its deliberations with the alternate juror."

We summarize the facts relating to the substitution of the alternate juror. After the judge charged the jury, the number of jurors was reduced from sixteen to twelve. The alternate jurors were then kept separate from the other jurors and were attended by the court officers.

The jurors commenced deliberations at 3:20 P.M.[12] They suspended their deliberations without reaching a verdict at approximately 8:30 P.M. and were sequestered for the night.

The next morning, the jurors resumed deliberations shortly after 9:30 A.M. At 11:40 A.M. a court officer informed the judge that a juror had become ill during deliberations, that she had vomited and that she was being attended by a physician. The foreman of the jury corroborated the court officer's report.

The judge found that the juror was ill and directed that she be discharged. The judge then informed the other jurors that he was about to replace the discharged juror with an alternate. The judge instructed the jurors that "[y]ou will then resume your deliberations with the alternate juror, but you must start at Point 1 and let that alternate juror participate fully in the deliberations, just as if he or she started the process with you at the beginning." The clerk then drew the name of an alternate juror and the jury began deliberations.

Approximately an hour later, the jury asked the judge to repeat the portion of his charge which defined the degrees of murder and the "legal definitions" of the words contained therein. The judge did so. The jurors then resumed deliberations and at 1:40 P.M. indicated that they had reached a verdict.

The defendant argues that G. L. c. 234, § 26B, is unconstitutional, and therefore the judge's action in permitting an alternate juror to replace one of the original jurors was invalid.[13] The nature of the defendant's constitution-

---

[12] Subsequent to oral argument in this case, the parties filed a stipulation as to the time sequence of the jury deliberations.

[13] On appeal, the defendant argues for the first time that the judge

al argument is unclear, except that he argues without elaboration that the substitution of the alternate juror after the jury had begun deliberations deprived him of the "right to a trial by jury whose verdict was the unanimous vote of each juror." The defendant's claim, as we interpret it, is that the trial by jury preserved in our Constitution, as well as in the Sixth Amendment to the United States Constitution, precludes any change in the essential characteristics of a trial by jury as it existed at common law. He argues that the substitution of a juror after deliberations have begun violates the fundamental principles governing common law trial by jury. The issue then is whether G. L. c. 234, § 26B, as construed and applied by the judge in this case, preserves the essential elements of the defendant's right to trial by jury. We think that it does.

Prior to its amendment in 1967, G. L. c. 234, § 26B, permitted the substitution of alternate jurors only up to the time the jury began its deliberations. We sustained this earlier statute against constitutional challenge in *Commonwealth* v. *Bellino*, 320 Mass. 635, cert. denied,

---

abused his discretion in replacing the original juror. The defendant claims that because the judge did not personally examine the juror before discharging her, the information before the judge was "insufficient to warrant a finding that the juror was incapacitated."

We do not address the question whether the judge's finding constituted an abuse of his discretion under G. L. c. 234, § 26B. The defendant did not raise this issue at trial, despite ample opportunity to do so. On the contrary, after the alternate's name was drawn and before the jury retired to deliberate, the defendant informed the judge that his objection to the substitution of the alternate was grounded *solely* in the constitutional claim. The defendant indicated to the judge that the defendant agreed that the judge's action "comports with the statute."

On appeal, we need not consider a theory which the defendant explicitly waived at trial. See *Commonwealth* v. *Podlaski, ante* 339, 343 n.4 (1979); *Commonwealth* v. *Lewis*, 346 Mass. 373, 383 (1963), cert. denied, 376 U.S. 933 (1964). Nothing in the record contradicts the judge's finding. After the juror was discharged, the fact of the juror's illness was confirmed by an oral report from the attending doctor to the judge in the presence of counsel.

330 U.S. 832 (1947). In *Bellino*, the statute was upheld because it preserved the essence of the right to trial by jury which "consists of those elements . . . which tend to protect the citizen against arbitrary power and to ensure to him that issues of fact shall be determined by the composite judgment of a fairly numerous and representative body of impartial residents of the county selected at large . . . ." *Id.* at 639. See *Opinions of the Justices*, 360 Mass. 877, 883-884 (1971).

General Laws c. 234, § 26B, was amended by St. 1967, c. 285, to provide that a judge may substitute an alternate juror for a juror who dies or becomes ill, or for other good cause. The judge may make such a substitution at any time after the jury begins its deliberations, until the jury reaches a verdict.

Like similar statutes in other States, G. L. c. 234, § 26B, is designed to accommodate the public's interest in avoiding a second "long and expensive trial" while protecting the defendant's right to a trial by jury. *Commonwealth* v. *Bellino, supra* at 642. See *Tanner* v. *State*, 242 Ga. 437, 438 (1978); *State* v. *Lipsky*, 164 N.J. Super. 39, 43 (1978). See generally Paisley, The Federal Rule on Alternate Jurors, 51 A.B.A.J. 1044, 1044-1045 (1965). The statute gives the judge the discretionary authority to substitute an alternate for a juror who becomes ill, dies, or who, for other good cause, must leave the jury during deliberations.

The procedure utilized by the judge in this case was consistent with the requirements of G. L. c. 234, § 26B. The judge properly found that the juror was ill and decided to substitute an alternate. The alternate's name was then drawn by lot and the judge then instructed the jury to begin its deliberations anew. The judge construed the word "renew" in the statute to require that the jurors not merely *resume* deliberations, but that they begin deliberations anew. As a result the judge gave emphatic instructions to the jury that they were to "start at Point 1 and let that alternate juror participate fully in the delibera-

tions." We think the instructions adequately protected the defendant's constitutional right to a jury verdict composed of the unanimous judgment of twelve impartial individuals. Accord, *Commonwealth* v. *Bellino, supra* at 640; *Opinions of the Justices, supra* at 883-884.

Other jurisdictions with similar statutes have reached the same result. In *State* v. *Miller*, 76 N.J. 392, 406-407 (1978), and in *People* v. *Collins*, 17 Cal. 3d 687, 693-694 (1976), cert. denied, 429 U.S. 1077 (1977), statutes permitting the substitution of alternate jurors for good cause after the commencement of deliberations were sustained against constitutional challenge as long as "the jury [is] instructed in clear and unequivocal terms that it is to begin its deliberations anew . . . ." *State* v. *Miller, supra* at 407. See *People* v. *Collins, supra* at 694. Compare *Tanner* v. *State*, 242 Ga. 437, 438 (1978) (mere "access to previous deliberations" is constitutionally adequate), with *People* v. *Ryan*, 19 N.Y.2d 100 (1966) (statute violates New York Constitution).[14] See generally 95 N.J.L.J. 355-356 (1972).

We think it instructive to add that, in the future, before a juror is excused from deliberations and replaced by an alternate juror, the judge should hold a hearing and be fully satisfied that there is a meritorious reason why a particular juror should not continue to serve. Depending on the nature of the reason why replacement of the juror is being considered, the juror's presence may or may not

[14] In *People* v. *Ryan*, 19 N.Y.2d 100 (1966), the Court of Appeals invalidated the New York statute which allowed the substitution of alternate jurors after deliberations had begun. However, in *Ryan*, the possibility of beginning deliberations anew apparently was not raised, and the court emphasized that "once the deliberative process has begun, it should not be disturbed by the substitution of one or more jurors who had not taken part in the previous deliberation and who had 'cease[d] to function as' jurors." *Id.* at 105. See *People* v. *Collins*, 17 Cal. 3d 687, 694 n.4 (1976), cert. denied, 429 U.S. 1077 (1977). The California Supreme Court held that a construction of a similar statute requiring deliberations to begin again corrected this error. See *id.* at 694 n.4. We find this approach persuasive.

be required, but all other personnel with relevant information should be heard by the court and counsel before the juror is formally discharged. The judge then should consider whether, in view of all the circumstances, an alternate juror should be substituted. See *State* v. *Miller, supra* at 407; *State* v. *Lipsky, supra* at 43. Cf. G. L. c. 234, § 26A. See generally *In re Mendes,* 82 Cal. App. 3d 709, 711-713 (1978) (discussing options available when a juror becomes ill). If a judge determines that the substitution of an alternate juror is appropriate, then the judge, as the judge did here, must instruct the jury to disregard all prior deliberations and begin its deliberations again.[15]

Since the judge in this case fully complied with the statute, which we find constitutional, the substitution of an alternate juror for the juror who became ill during deliberations did not deprive the defendant of his right to trial by jury.[16]

---

[15] One example of such instruction is provided in Richards, California Jury Instructions — Criminal § 17.51 (1978 supp. pamphlet No. 2):

"Ladies and Gentlemen of the Jury:

"One of your number has been excused for legal cause and replaced with an alternate juror. You must not speculate or consider for any purpose the reasons for such excuse.

"The People and ... [the] defendant have the right to a verdict reached only after full participation of the twelve jurors who ultimately return the verdict.

"This right may be assured in this case only if the jury begins its deliberations again from the beginning.

"You are therefore instructed to set aside and disregard all past deliberations and begin deliberations anew. This means that each remaining original juror must set aside and disregard the earlier deliberations as if they had not taken place.

"You shall now retire for your deliberations in accordance with all the instructions previously given."

[16] To the extent that the defendant argues, with no record support, that the incapacitated juror was the only one "voting for acquittal," we decline to speculate concerning the initial deliberations of the jury. Indeed, this argument appears to be based on postverdict conjecture since it was not even suggested to the trial judge.

5. *Relief Pursuant to G. L. c. 278, § 33E.*

The defendant asks that we exercise our authority pursuant to G. L. c. 278, § 33E, to order a new trial. In the alternative, he asks that we reduce the conviction of murder in the second degree to manslaughter.

The defendant's arguments in support of his request for a new trial do no more than repeat the arguments which we have already addressed. We find no error and decline to order a new trial. Cf. *Commonwealth* v. *Brown,* 376 Mass. 156, 166-168 (1978).

The defendant's argument in support of a verdict of manslaughter is grounded solely in his social and educational background and the absence of a prior adult criminal record. These considerations are insufficient to warrant a reduction of the verdict where, as here, the defendant obtained a knife and after the passage of time sought out, confronted and stabbed an unarmed victim. Compare *Commonwealth* v. *Jones,* 366 Mass. 805, 808-809 (1975).

Finally, we have reviewed the entire case for consideration of the law and the evidence. We find no other reason to order a new trial or to direct the entry of a verdict of manslaughter.

*Judgment affirmed.*