COMMONWEALTH *vs.* JEROME A. DiMURO, JR.

Suffolk. December 11, 1989. - January 16, 1990.

Present: WARNER, C.J., KASS, & FINE, JJ.

*Controlled Substances. Joint Enterprise. Evidence,* State of mind, Admissions and confessions, Impeachment of credibility, Cross-examination. *Constitutional Law,* Admissions and confessions, Assistance of counsel, Waiver of constitutional rights. *Practice, Criminal,* Assistance of counsel. *Waiver. Error,* Harmless. *Witness,* Bias, Impeachment, Cross-examination.

At a criminal trial, admission of the defendant's statements made to the police while in their custody in derogation of the defendant's right under the Fifth Amendment to the United States Constitution to have counsel present during custodial interrogation, even if error, was harmless beyond a reasonable doubt where the evidence of the defendant's guilt properly admitted against him was overwhelming. [225-228]

At a trial on an indictment charging the defendant with trafficking in cocaine, the judge did not abuse his discretion in limiting, on grounds of relevancy, defense counsel's cross-examination of a State police chemist about pending criminal charges against him. [228-229]

INDICTMENTS found and returned in the Superior Court Department on January 13, 1988.

A motion to suppress evidence was heard by *John Paul Sullivan,* J., and the cases were tried before *Cortland A. Mathers,* J.

*Barbara A. H. Smith* for the defendant.

*Jill S. Plancher,* Assistant Attorney General, for the Commonwealth.

FINE, J. After a jury trial in the Superior Court, the defendant was convicted of trafficking in cocaine and unlawfully carrying a firearm on his person. He contends on appeal that there was error in the denial of his motion to suppress statements made to the police while he was in custody and in limiting his cross-examination of a Commonwealth witness at

trial. With respect to the limitation of cross-examination, we think the trial judge's ruling was a proper exercise of discretion. With respect to the denial of the motion to suppress the statements, we think the defendant has made a persuasive argument based upon his right under the Fifth Amendment to the United States Constitution to have counsel present during a custodial interrogation. However, because this is a case in which the ruling complained of, even if erroneous, was harmless beyond a reasonable doubt, we affirm the convictions even apart from the claimed constitutional error.

The case arises out of a drug transaction set up by a State trooper acting under cover. According to the evidence at trial, State Trooper Mary Minihan telephoned a number listed to "Jerome DiMuro." She asked to speak to "Jerry," and the person who answered said he was "Jerry." During the course of the conversation, Trooper Minihan arranged to purchase eight ounces of cocaine for $7,200. "Jerry" told Trooper Minihan that "Mike went to get the stuff." Trooper Minihan arranged with "Jerry" to meet at 1:30 that afternoon outside Riley's Roast Beef in East Boston to consummate the transaction.

Two men approached Trooper Minihan as she waited at the appointed time and place in the car she had described to "Jerry" on the telephone. The defendant introduced himself as "Jerry DiMuro" and his companion as "Mike." Trooper Minihan produced a bag containing the money from the trunk of another car in the parking lot, and "Mike" took a packet from his pocket and threw it in the same car trunk. The packet contained 7.97 ounces, or 223.4 grams, of 72% pure cocaine.

The defendant and "Mike" were arrested at the scene by Trooper Minihan, with the assistance of other police officers dressed in plain clothes who had witnessed the incident. The defendant was carrying a fully loaded automatic handgun. When a police officer asked the defendant why he was carry-

ing the gun, the defendant said it was for his protection, "so nobody would rob him of the cocaine."[1]

This essentially uncontroverted evidence provided overwhelming support for the guilty verdicts. Identification was not in issue. The defendant negotiated the drug sale, and, armed for his protection, he was present during the entire transaction. The evidence clearly established the requisite knowledge and intent for culpability as a joint participant in the commission of the drug trafficking offense. See G. L. c. 94C, § 32E(b)(3); *Commonwealth* v. *Longo*, 402 Mass. 482, 486 (1988). The statements which the defendant sought unsuccessfully to suppress were to the effect that he did not know the source of the cocaine and that his role was to obtain the customers, something he had been doing for only two months. We are confident that admission of those statements did not affect the outcome of the case.

*The motion to suppress.* The motion judge found that the incriminatory statements were made in the following circumstances. The defendant was given his Miranda warnings upon arrest and again upon his arrival at the East Boston police station. Due to a bomb scare there shortly after his arrival, the defendant was taken to a police station in downtown Boston, where he was given the Miranda warnings again. From the booking desk, he placed a call to attorney Gerald Ogus. Mr. Ogus's answering service received the call at approximately 2:30 P.M. A few minutes later, Mr. Ogus returned the call to the defendant at the police station. After reaching the front desk, Mr. Ogus was transferred to the booking desk where an unidentified officer called out that the defendant's attorney was on the phone. Mr. Ogus conversed with the defendant and agreed to represent him. Mr. Ogus then asked to speak to a police officer. The front desk officer came on the

---

[1]The statement was made by the defendant at the police station after he received the Miranda warnings. The judge's findings on the motion to suppress do not deal with the circumstances surrounding the statement, and the defendant does not argue on appeal that the statement should not have been admitted. It is not clear from the evidence either at the hearing on the motion to suppress or at trial that the statement was made after the defendant first spoke to his attorney.

line. After talking with that officer, Mr. Ogus asked to speak to the defendant again. Mr. Ogus was placed on hold. The front desk officer did not see the arresting officers or the defendant and assumed they had left the station. The front desk officer came back on the line, therefore, and told Mr. Ogus that the defendant was on his way back to East Boston for arraignment. This information was incorrect. Two officers had taken the defendant into a private room for interrogation. The defendant had been told, falsely, that he was being taken there for fingerprinting. He was again given his Miranda warnings. The officers told him that he had been charged with trafficking, for which he could receive a ten-year sentence, and that they would tell the Attorney General if he cooperated. There was no discussion about whether the defendant wished to have his attorney present. He proceeded to make the incriminating statements. Mr. Ogus, in the meantime, relying on the information given to him over the telephone, had gone to East Boston only to find the defendant not there.

The motion judge ruled, based upon his reading of *Commonwealth* v. *Mahnke*, 368 Mass. 662, 692 (1975), and *Commonwealth* v. *Hooks*, 375 Mass. 284, 295 (1978), that, to show a constitutional violation, the defendant had to prove that the police acted deliberately or negligently in withholding from him the fact that his attorney was requesting to speak with him. The judge found that the withholding of that information was not a deliberate deprivation of the defendant's right to counsel, and he concluded that the front desk officer was not unreasonable in assuming that, by the time Mr. Ogus asked to speak to the defendant again, the defendant had left the station. Accordingly, the motion judge viewed the defendant as having adequately waived his right to counsel.

We do not think the ruling was correct. Recent Federal decisions interpreting the right to counsel in similar circumstances, we think, required suppression.[2] Some of the police

---

[2] Even if we approached this case with an analysis similar to that of the motion judge, it is not clear to us that the defendant's waiver of his right

officers at the station surely knew that the defendant received a telephone call from an attorney shortly after his arrest. One of them announced that it was the defendant's attorney calling, and the attorney spoke to a police officer and stated that he was representing the defendant. Although the defendant made no express assertion to the police that he did not wish to be interrogated in the absence of his attorney, compare *Edwards* v. *Arizona*, 451 U.S. 477 (1981); *Smith* v. *Illinois*, 469 U.S. 91 (1984), his words and actions were at least an ambiguous assertion that he wished to have his attorney present. In that situation, before interrogating the defendant about the offense for which he was under arrest, the officers should have found out specifically whether he wanted his lawyer present. See order denying rehearing in *United States* v. *Porter*, 764 F.2d 1, at 776 F.2d 370 (1st Cir. 1985), cert. denied, 481 U.S. 1048 (1987).[3] It is not material that the particular officers conducting the investigation may not have known that the defendant had arranged to be represented by counsel on the charges. See *Arizona* v. *Roberson*, 108 S. Ct. 2093, 2101 (1988); *United States* v. *Porter*, 764 F.2d at 6.

Before initiating the interrogation in this case, the officers read the defendant the Miranda warnings, but they did not specifically ask him if he was willing to be questioned without waiting for Mr. Ogus to be present to represent him. In the circumstances, the police inquiry was inadequate. See *United States* v. *Porter*, 764 F.2d at 6-7 ("Merely asking the accused whether he understood his rights does not satisfy the duties of an interrogating officer or make any statement the accused might then make admissible"). Compare *United*

---

to counsel before submitting to police interrogation can be viewed as knowing and intelligent if he was not informed that his attorney was still on the telephone and was asking to speak to him again. See *Commonwealth* v. *McKenna*, 355 Mass. 313, 324 (1969); *Commonwealth* v. *Sherman*, 389 Mass. 287, 291 (1983). But see *Moran* v. *Burbine*, 475 U.S. 412, 421-422 (1986).

[3]The Supreme Court has twice declined to rule on the requirements police officers must satisfy before continuing with questioning when faced with an ambiguous request for counsel. See *Smith* v. *Illinois*, 469 U.S. at 96 & n.3; *Connecticut* v. *Barrett*, 479 U.S. 523, 533 n.3 (1987).

*States* v. *Fouche*, 833 F.2d 1284, 1287-1289 (9th Cir. 1987), cert. denied, 108 S. Ct. 1756 (1988). But see *United States* v. *Gonzalez*, 833 F.2d 1464, 1466 (11th Cir. 1987).

As our summary of the case against the defendant shows, however, the evidence of guilt in this case was overwhelming. In the circumstances, admission of the defendant's statements, even if error, was harmless beyond a reasonable doubt. As the constitutional deprivation did not "pervade the entire proceeding" or "cast . . . doubt on the fairness of the trial process," a harmless error analysis applies. *Satterwhite* v. *Texas*, 486 U.S. 249, 256 (1988). See also *Milton* v. *Wainwright*, 407 U.S. 371 (1972); *Smith* v. *Estelle*, 519 F.2d 1267, 1270 (5th Cir. 1975). Contrast *Commonwealth* v. *Marini*, 375 Mass. 510, 520 (1978). We affirm the conviction, therefore, notwithstanding our views on the constitutional claim.

*The limits placed on cross-examination.* A State police chemist testified at trial that on January 5, 1988, he analyzed the contents of the packet, he concluded that it contained cocaine, and he determined its purity and weight. As a result of questioning on voir dire, the trial judge was informed that events unrelated to the witness's work as a chemist, involving a break-in or an alleged break-in of a real estate office in October of 1988, resulted in suspension from his job with the State police and the imposition of criminal charges against him which were pending at the time of trial. The defendant requested permission to inquire about those matters on cross-examination. The trial judge denied the request on grounds of relevancy.

Ordinarily, a defendant has the right to cross-examine a Commonwealth witness about pending criminal charges against him in an effort to show bias on the part of the witness who might want to give false testimony to curry favor with the prosecution with respect to his case. See *Commonwealth* v. *Dougan*, 377 Mass. 303, 310 (1979); *Commonwealth* v. *Haywood*, 377 Mass. 755, 760 (1979); *Commonwealth* v. *Joyce*, 382 Mass. 222, 229-230 (1981); *Commonwealth* v. *Martinez*, 384 Mass. 377, 380 (1981).

There is, nevertheless, some room for the exercise of discretion in the event of such a request, as, for example, where a witness has made statements to the police before his arrest and his testimony at trial is consistent with his earlier statements. See *Commonwealth* v. *Haywood*, 377 Mass. at 755.

Here the State chemist's opinion was formed on January 5, 1988, months before any of the events resulting in the criminal charges against him, and his testimony at trial was consistent with his original report. Moreover, there was no serious issue at trial that the substance in question was cocaine. Nor was there any serious dispute that the cocaine weighed in excess of 200 grams, as alleged in the indictment. See G. L. c. 94C, § 32E(*b*)(3), as amended through St. 1983, c. 571, § 3. The trial judge did not abuse his discretion, therefore, in curtailing the cross-examination.

*Judgments affirmed.*