164 N.J. Super. 39 (1978)
395 A.2d 555
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HAROLD LIPSKY AND CHRISTINA CANALEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 21, 1978.
Decided November 30, 1978.
*41 Before Judges LORA, MICHELS and LARNER.
Mr. Richard Newman argued the cause for appellants (Messrs. Isles, Newman and Weissbard, attorneys).
Mr. Everett T. Denning, First Assistant Prosecutor, argued the cause for respondent (Mr. Edward J. Turnbach, Prosecutor of Ocean County, attorney).
The opinion of the court was delivered by LARNER, J.A.D.
After a five-day jury trial Harold Lipsky, an attorney, and Christina Canaley were convicted on three counts of an indictment which charged both of them with conspiracy to obstruct justice, perjury by Canaley and subornation of perjury by Lipsky. While defendants advance several grounds of error, we deem it necessary to consider only the issue dealing with the substitution of an alternate juror during jury deliberations pursuant to R. 1:8-2(d). Unfortunately, the procedural deficiencies in the implementation of this process compels a reversal of the judgment of conviction.
Preliminarily, we note that appellants' attack upon the facial constitutionality of the pertinent procedural device of R. 1:8-2(d) authorizing the substitution of an alternate *42 juror during deliberations because of the inability of a member of the jury to continue is no longer viable. The case of State v. Miller, 76 N.J. 392 (1978), decided after the trial herein, set this question at rest in its holding that the rule itself is free from constitutional infirmity. We are therefore concerned with the propriety of the trial judge's implementation of the rule rather than its facial validity.
After the completion of the trial at about 1:30 P.M. on a Friday, the fifth day of trial, the judge drew the names of two alternates from the roster of 14 jurors and sent out the remaining 12 members to commence their deliberations. The alternates were sequestered until 4 P.M., at which time the judge permitted them to leave after securing their telephone numbers where they could be contacted. No specific instructions were given to these alternates when they were sequestered or when they were excused to leave the courthouse.
At about 6:15 P.M. one of the jurors, Ms. Bosch, informed the court that she was ill. The colloquy with this juror consisted of the following:
THE COURT: Ms. Bosch, do you feel ill?
Ms. Bosch: Yes.
THE COURT: Would you be able to if you felt good to continue tomorrow or Monday?
Ms. Bosch: I can continue Monday. Right now I wasn't feeling very well.
THE COURT: All right. Are you available tomorrow?
Ms. Bosch: Yes.
THE COURT: Do we have your telephone number? Will you get Ms. Bosch's telephone number? If you will note your address and telephone number, can you wait a moment until we decide what to do?
Thereupon the entire panel entered the courtroom and the judge informed the jury that he was excusing Ms. Bosch. He requested the jurors to advise whether they preferred to return the next day (Saturday) or Monday, or to continue with their deliberations that evening. When the jurors returned they informed the judge that a "majority of the *43 jury would rather have supper and stay tonight." Ms. Bosch was then excused.
Over the objection of counsel the judge acceded to the preference of the majority of the jurors and decided to excuse them for dinner in order to continue with their deliberations thereafter. Apparently, he felt that this was the most practical solution in view of the coming weekend and the continuation of the "momentum" of the deliberations.
As it turned out, one of the alternates had gone to a wake and could not be contacted. The other alternate, Mr. Rayner, was summoned and he appeared at 8:30 P.M. Upon inquiry this alternate juror assured the judge that he had not read or heard anything about the case or discussed it with anyone after leaving the courthouse. Without more, and without further instructions to him or the other 11 members of the jury, Rayner was escorted by the court officer to join the other jurors in their deliberations. At 10 P.M. the jury returned with a unanimous verdict of guilty on all charges.
Before consideration of the legal insufficiencies inherent in the methods utilized by the judge in adopting the substitution procedure of R. 1:8-2(d), we hasten to emphasize that this mechanism should be invoked only when other means of avoiding a mistrial are unavailable. Although its use is manifestly within the discretion of the trial judge (State v. Trent, 157 N.J. Super. 231, 240-241 (App. Div.), certif. granted 77 N.J. 507 (1978)), the potential prejudicial impact upon the integrity of the jury deliberation process would mandate that the rule be invoked only as a last resort mechanism to avoid the deplorable waste of time, effort and money inherent in a mistrial. See State v. Miller, supra, Conford, J. and Halpern, J., dissenting, 76 N.J. at 425-427, 429-432. The rule must be strictly construed and applied only where compelling circumstances require it. See State v. Trent, supra, 157 N.J. Super. at 240.
Applying this stricture to the circumstances facing the trial judge when Ms. Bosch indicated that she was ill, it certainly would have been more appropriate to have followed *44 other courses to resolve the dilemma. The judge failed to make further inquiry as to the nature of the juror's illness, or whether a continuance to the following morning or Monday morning would be the better solution. Instead, on the mere statement by the juror that she was ill, he discharged her and invoked the R. 1:8-2(d) procedure. Without great upheaval, he could have excused the panel for a day or two pending further inquiry as to the juror's condition. His effort to please the majority of jurors was misplaced and led to the problem which now compels the rerun of the trial process.
Nevertheless, despite our disagreement with the judgmental decision of the trial judge, we cannot conclude that his failure to utilize better alternatives constitutes an abuse of the discretion vested in him in procedural matters of this kind.
What is more significant from an appellate point of view is the failure of the judge to implement the juror's substitution by sufficient protective measures to insure the integrity of the jury function.
The most glaring omission is the absence of an instruction to the newly constituted jury that it must begin its deliberations anew so that the jury panel would, as far as practicable, eliminate the impact of the influence of the excused juror, and consider the evidence in the context of full and complete deliberations with the new juror. Such an instruction and renewal of the jury's consideration is an absolute minimum as a guarantee of the continued integrity of a jury verdict returned in the instance of a juror substituted after deliberations have commenced.
As Justice Sullivan cautioned in State v. Miller, supra:
Of course, when an alternate juror is so substituted, the jury must be instructed in clear and unequivocal terms that it is to begin its deliberations anew * * *. [76 N.J. at 407]
Such is also the meaning and significance of the last sentence of R. 1:8-2(d) that

*45 When such a substitution of an alternate juror is made, the court shall give the jury such supplemental instructions as may be appropriate.[1]
See also, People v. Collins, 17 Cal.3d 687, 131 Cal. Rptr. 782, 786-787, 552 P.2d 742 (1976), cert. den. 429 U.S. 1077, 97 S.Ct. 820, 50 L.Ed.2d 796 (1977).
The constitutional guarantee of a jury trial in criminal causes (N.J. Const. (1947), Art. I, § 9; U.S. Const. Amend. VI) is violated unless the verdict is the product of 12 jurors who have heard all the evidence and arguments and who have deliberated together to reach a unanimous decision. A conviction by any process short of this, unless consented to by a defendant, cannot stand.
The California Supreme Court in People v. Collins, supra, aptly expressed the controlling rationale in the following excerpt from its opinion:
The requirement that 12 persons reach a unanimous verdict is not met unless those 12 reach their consensus through deliberations which are the common experience of all of them. It is not enough that 12 jurors reach a unanimous verdict if 1 juror has not had the benefit of the deliberations of the other 11. Deliberations provide the jury with the opportunity to review the evidence in light of the perception and memory of each member. Equally important in shaping a member's viewpoint are the personal reactions and interactions as any individual juror attempts to persuade others to accept his or her viewpoint. The result is a balance easily upset if a new juror enters the decision-making process after the 11 others have commenced deliberations. The elements of number and unanimity combine to form an essential element of unity in the verdict. By this we mean that a defendant may not be convicted except by 12 jurors who have heard all the evidence and argument and who together have deliberated to unanimity.
We thus reject the People's contention that substitution of an alternate juror after deliberations have begun under the authority of section 1089 does not offend the constitutional mandate when deliberations are not commenced anew. [17 Cal.3d at 693, 131 Cal. Rptr. at 786, 552 P.2d at 746]
*46 That court also specified the nature of the instructions which should be given to the reconstituted jury when an alternate is substituted during deliberations, which are just as appropriate for our jurisdiction:
We accordingly construe section 1089 to provide that the court instruct the jury to set aside and disregard all past deliberations and begin deliberating anew. The jury should be further advised that one of its members has been discharged and replaced with an alternate juror as provided by law; that the law grants to the People and to the defendant the right to a verdict reached only after full participation of the 12 jurors who ultimately return a verdict; that this right may only be assured if the jury begins deliberations again from the beginning; and that each remaining original juror must set aside and disregard the earlier deliberations as if they had not been had. * * * [17 Cal.3d at 694, 131 Cal. Rptr. at 787, 552 P.2d at 747]
Manifestly, the trial judge's failure to instruct the jury along the foregoing lines represents a substantial invasion of defendants' right to a jury trial which taints the integrity of the verdict.
In view of our holding on this substantial deficiency, we do not reach the question whether other procedural defects were of sufficient prejudicial impact to warrant setting aside the verdict. Among those are: failure to select the alternate by drawing one of the two names by lot, as specified in R. 1:8-3; failure to give specific instructions to the two alternates not to discuss the case between themselves or with others; failure of the judge to question alternate Rayner whether he had discussed the case with the other alternate during their sequestration together. These omissions demonstrate the utmost care which must be taken by a trial judge in the overall process involving alternate jurors in order to prevent any possible extraneous influence upon the integrity and sanctity of the deliberative and decision-making function of the jury.
In view of the foregoing, we reverse and remand the matter for a new trial.
NOTES
[1] See Transcript, Proceedings of New Jersey Judicial Conference, April 21, 1972, which explored the problems relating to the rule change and perhaps led to the amendment of the proposed rule containing this additional requirement of instructions.