840 A.2d 835

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
DESHAND MILTON A/K/A DESHON L. MILTON,
DEFENDANT–APPELLANT.

Argued October 21, 2003—Decided February 10, 2004.

422

*Ruth Bove Carlucci,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Linda A. Shashoua,* Assistant Prosecutor, argued the cause for respondent (*Vincent P. Sarubbi,* Camden County Prosecutor, attorney).

Justice ZAZZALI delivered the opinion of the Court.

A jury found defendant, Deshand Milton, guilty of three drug-related offenses. When polled on the second of the three counts, one juror hesitated before responding, "Um guilty. That was the verdict that I gave." Despite evidence that the juror initially may have said "not guilty," the trial court accepted the verdict on Count Two as unanimous and denied defendant's motion for a new trial. The Appellate Division affirmed.

The question presented is whether the trial court abused its discretion when it determined that the juror's final "guilty" answer to the poll on Count Two indicated clear concurrence with the verdict. We find that the circumstances surrounding that expression of agreement raise significant doubt about the juror's true intentions with respect to the verdict on Count Two. Accordingly, we hold that the trial court erred in accepting the juror's ambiguous response without further questioning. Because the jury poll did not adequately safeguard defendant's right to a unanimous verdict, we conclude that the guilty verdict on Count Two cannot stand. In view of the substantial similarities between the offenses charged in Counts Two and Three, our disposition on Count Two also requires us to vacate the guilty verdict on Count Three. Thus, we reverse the judgment of the Appellate Division and remand for a new trial on Counts Two and Three.

I.

A.

We summarize the facts surrounding defendant's alleged criminal conduct to place the question at issue in context. Because

defendant did not testify or call any witnesses on his behalf, we gather the relevant facts from the testimony of the State's witnesses.

On the evening of February 1, 1999, Camden City Police Sergeant William J. Murray conducted a surveillance investigation of small-quantity drug transactions in an area of Camden known for drug trafficking. Murray was positioned near a public-housing apartment building when he observed several men, including defendant, standing together approximately twenty-five yards from the sergeant's location. Although it was dark, glow from street lamps and nearby apartment buildings provided some light.

Murray testified that he observed an unknown man approach defendant's group and give defendant what, in Murray's opinion, were folded bills of U.S. currency. Defendant then reached into his pocket and pulled out an item or items, which he handed to the stranger. Having completed the exchange, the stranger left the area. Although Murray did not see the precise items that defendant took out of his pocket, Murray testified that as a result of his training and experience, he believed that defendant's conduct was consistent with a street-level narcotics transaction. Murray contacted his back-up unit and requested assistance with an arrest. Leaving his surveillance location, Murray approached defendant and identified himself as a police officer. Defendant ran from the area, but Murray and his back-up unit quickly apprehended defendant and placed him under arrest.

A search of defendant's pants pocket revealed $25.00 in cash and five small, orange, heat-sealed plastic bags, each containing cocaine. A senior investigator with the narcotics unit of the Camden County Prosecutor's Office, who is an expert in the field of street-level drug distribution, testified that the bags discovered on defendant's person would sell for between five and ten dollars each and were packaged in a manner consistent with street-level drug distribution.

## B.

With those facts as background, we turn to the focus of defendant's allegations of error, namely, irregularities in the poll of the jury. After its deliberations, the jury returned to the courtroom and the foreperson announced that the jury had reached a unanimous verdict. According to the foreperson, the jury found defendant guilty of possession of a controlled dangerous substance (Count One), *N.J.S.A.* 2C:35–10a(1); possession of a controlled dangerous substance with the intent to distribute the same (Count Two), *N.J.S.A.* 2C:35–5a(1) and 5b(3); and distribution, or intent to distribute, a controlled dangerous substance within 500 feet of the property of a public-housing facility (Count Three), *N.J.S.A.* 2C:35–7.1a.

Defense counsel then indicated that he wanted to have the jury polled. The court instructed the jury that the court clerk would call each juror by seat-number and ask each juror to state his or her verdict by indicating either guilty or not guilty. The poll on Count One was uneventful, with each juror clearly stating "guilty." However, it is the poll on Count Two that generated the problems central to this appeal. Although neither the transcript nor the videotape of the poll provides a complete picture of what occurred in the courtroom, together they reveal the following facts.

When polled on Count Two, Juror No. 8 remained silent for approximately fifteen seconds before asking the clerk, "Do you want me to tell [the truth?]" Thereafter, the following exchange ensued between Juror No. 8 and the court:

COURT: Ma'am, absolute—I want to know what your verdict is on Count—on Count Two, Ma'am?

JUROR NO. 8: My verdict?

COURT: Yes. How—how you voted, yes, Ma'am.

JUROR NO. 8: [No response]

[Approximately ten seconds pass.]

COURT: Ma'am, the Foreperson indicated the jury was unanimous. We're trying to confirm that the—that the verdict was unanimous. That's the purpose of this, Ma'am. Was your—was your verdict not guilty or guilty, Ma'am?

JUROR NO. 8: [No response]

[Approximately twenty seconds pass.]
COURT: Well, Ma'am, you have to respond.
JUROR NO. 8: Um, guilty. That was the verdict that I gave.

As to Count Two, the remaining jurors unanimously indicated their verdict as guilty. When polled on Count Three, all of the jurors, including Juror No. 8, concurred with the guilty verdict announced by the foreperson. Accordingly, the court found that the poll established that the jury was unanimous on all three counts.

At the close of the court's final remarks to the jury, defense counsel approached the bench. In a sidebar conference with the assistant prosecutor and the trial court, defense counsel expressed concern over Juror No. 8's response to Count Two. He explained, "[I]t appeared to me before she said guilty she asked if you wanted the truth ... she whispered—well—sounded to me like she said not guilty." Responding to defense counsel's concerns, the court noted, "I heard her say do you want the truth. I said yes. And she said guilty." Defense counsel then requested that the court conduct an *in camera* hearing with the juror. Because the court had not heard the alleged inconsistent response and was satisfied by her final answer—"Um guilty. That was the verdict that I gave."—the court denied defense counsel's request and excused the jury.

Thereafter, defendant filed a motion for a new trial, alleging, among other claims, that the verdicts on Counts Two and Three may not have been the product of a unanimous jury. In the alternative, defendant asked the court to recall Juror No. 8 for an interview. Two months after trial, the court held a hearing on defendant's motion. At that hearing, defendant called three witnesses who were present in the courtroom during the polling of Juror No. 8.

The first witness was Sharon Piper, an assistant prosecutor with the Camden County Prosecutor's Office, who observed the poll but was not involved in the trial. Piper recalled that Juror No. 8 "didn't respond right away," "took a long time to answer," and

"might have mouthed ... 'not guilty' in response to the Clerk's questioning." When asked whether she heard Juror No. 8 say "not guilty," Piper explained that she arrived at that impression from "watching [Juror No. 8] more than actually hearing [her]." Piper expressed her concern over Juror No. 8's "hesitation" to others in the courtroom. On cross-examination, Piper testified that she had no doubt that the juror said "guilty" when later questioned directly by the court.

Christine Myers, another assistant prosecutor who was observing defendant's trial with Piper, testified that Juror No. 8 initially hesitated when polled by the clerk. Myers remembered the juror "shaking her head and looking down." Myers thought, but was not certain, that she heard the juror softly say "not guilty." Myers explained that she distrusted that recollection after others in the courtroom indicated that they had not heard the "not guilty" response. Like Piper, Myers testified that she was certain Juror No. 8 ultimately said "guilty."

The third witness was Joan Cahill, the court clerk who conducted the poll. Cahill testified that she had no doubt that when she asked for Juror No. 8's verdict on Count Two, the juror hesitated and then "very softly" said "not guilty." Cahill explained that, in accordance with court practice, she looked to the court for guidance after recognizing that there was an inconsistency in the verdict. Because she assumed that the court heard the juror say "not guilty," Cahill did not bring the statement to the court's attention. On cross-examination, Cahill confirmed that she too heard Juror No. 8 say "guilty" when the court asked for her verdict.

The State called Tracy Cogan, the assistant prosecutor who tried the case and who, except for the judge, was seated closest to Juror No. 8. Cogan testified that she remembered the juror hesitating and breathing heavily. She noted that the juror asked the court, "[D]o you want the truth?" After the court said, "[O]f course I want the truth," Cogan heard Juror No. 8 respond, "I

voted guilty." Cogan testified that she never heard the juror say "not guilty."

Based on the above testimony, defense counsel argued that Juror No. 8 should have been questioned further to determine whether she in fact said "not guilty." Defense counsel contended that Juror No. 8's past-tense response to the poll on Count Two did not resolve whether she agreed with the guilty verdict announced by the foreperson because that response was subject to two alternative interpretations. Defense counsel stressed that Juror No. 8 may have intended her answer to reflect concurrence with the verdict that she "gave" while in the jury room. Alternatively, he argued that by phrasing her response in the past tense, the juror may have intended to disclose present disagreement with her prior decision. Because doubt remained about the meaning of her final answer, defense counsel requested a new trial or, in the alternative, an interview with the juror. In addition, the defense alleged that the uncertainty regarding the juror's verdict on Count Two also placed the unanimity of the verdict on Count Three in doubt.

In an oral opinion, the trial court denied defendant's motion for a new trial and the alternative motion to interview Juror No. 8. The court observed that during the polling process, it never heard the alleged "not guilty" remark. Acknowledging that Juror No. 8 hesitated before responding, the court noted that she eventually gave a clear response of "guilty." In view of that answer, the court explained that

> [i]t is not the [c]ourt's responsibility to go on a hunting expedition to make inquiries into something that may not exist. The juror was given the opportunity to tell the [c]ourt either guilty or not guilty. She clearly said guilty. And with regard to the third count, there absolutely was no[ ] question about guilty.

Satisfied with the verdict's unanimity, the court concluded that a post-trial interview of Juror No. 8 was unwarranted.

Proceeding to the sentencing stage, the court merged Counts One and Two into Count Three, sentencing defendant on Count Three only. Consistent with the State's request, the court applied the persistent-offender statute, *N.J.S.A.* 2C:44–3a, and imposed an

extended term of twenty years, with eight years of parole ineligibility.

The Appellate Division rejected defendant's challenges to his conviction and sentence. The panel held that the trial court did not abuse its discretion when it denied defendant's motion for a new trial and request to interview Juror No. 8. In reaching that decision, the court relied on *State v. Schmelz*, 17 *N.J.* 227, 233, 111 *A.*2d 50 (1955), in which we observed that "if it clearly appears that the juror concurs in the verdict any evasive statement or explanation volunteered by [the juror] is to be disregarded." Citing that *dictum*, the appellate court concluded that the fact that Juror No. 8 may have mouthed "not guilty" did not detract from her ultimate, unequivocal agreement with the verdict announced by the foreperson. Concerning defendant's excessive-sentence claim, the panel determined that the evidence supported the sentencing factors identified by the trial court and that the sentence was in accord with sentencing guidelines.

We granted defendant's petition for certification, 175 *N.J.* 548, 816 *A.*2d 1050 (2003), and now reverse the judgment of the Appellate Division.

## II.

### A.

Our analysis begins with the legal principles governing the right to a jury trial in criminal cases and the concomitant right to poll the jury.

▆▆▆ As an essential component of an accused's right to a jury trial, the right to a unanimous verdict is firmly rooted in our rules of procedure and our decisional law. *See R.* 1:8–9 (providing that "[t]he verdict shall be unanimous in all criminal actions"); *State v. Bey*, 112 *N.J.* 123, 157, 548 *A.*2d 887 (1988) (*Bey II* ) (noting that "[j]ury verdicts on guilt must be unanimous"); *State v. Lipsky*, 164 *N.J.Super.* 39, 45, 395 *A.*2d 555 (App.Div.1978) (explaining that New Jersey's "constitutional guarantee of a jury trial in

criminal causes . . . is violated unless the verdict is the product of 12 jurors . . . who have deliberated together to reach a unanimous decision") (internal citations omitted). The fundamental nature of the right to a unanimous verdict demands that the verdict be more than a perfunctory tally. It must stand as an abiding assurance of carefully considered deliberations and a faithfully rendered verdict.

As the Fifth Circuit has observed, "[t]here is no verdict as long as there is any uncertainty or contingency to the finality of the jury's determination." *Cook v. United States*, 379 *F*.2d 966, 970 (1967) (citing 23A *C.J.S. Criminal Law* § 1393). To ensure that no uncertainty remains about the verdict and its unanimity, our court rules afford all parties the right to poll the jury after the foreperson has announced the verdict but before the verdict has been officially recorded. *R.* 1:8–10. The jury poll involves "a procedure whereby the jurors are asked individually the finding [at which] they have arrived." *State v. Cleveland*, 6 *N.J.* 316, 322, 78 *A*.2d 560 (1951). " 'The very purpose of the formality of polling is to afford an opportunity for free expression, unhampered by the fears or the errors which may have attended the private proceedings.' " *Schmelz, supra*, 17 *N.J.* at 233, 111 *A*.2d 50 (quoting 8 *Wigmore on Evidence* § 2355 (1940 ed.)). By ascertaining the fact of individual concurrence, the poll makes certain that "no juror has been coerced or induced to agree to a verdict to which he has not fully assented." *Ragusa v. Lau*, 119 *N.J.* 276, 285, 575 *A*.2d 8 (1990) (Stein, J., concurring in part and dissenting in part) (citations and quotation marks omitted). Thus, the poll safeguards the right to a unanimous verdict by ensuring that the verdict announced by the foreperson accurately reflects the verdict of all jurors.

For the poll to serve its intended goal, it must be conducted in a manner that affords jurors a forum in which they can "dissent from a verdict to which they have previously assented in the juryroom." *Virgin Islands v. Hercules*, 875 *F*.2d 414, 418 (3d Cir.1989). Generally, a poll inquires into " 'whether each juror

assented, and *still assents,* to the verdict tendered to the court.' "
*State v. Vaszorich,* 13 *N.J.* 99, 127, 98 *A.*2d 299 (emphasis added)
(quoting *State v. Boger,* 202 *N.C.* 702, 163 *S.E.* 877, 878 (1932)),
*cert. denied,* 346 *U.S.* 900, 74 *S.Ct.* 219, 98 *L.Ed.* 400 (1953). By
asking whether the juror still agrees with the verdict, the trial
court gives each juror an opportunity to express his or her
decision freely, unrestrained by pressure that may have beset the
prior deliberations. *See Ragusa, supra,* 119 *N.J.* at 281, 575 *A.*2d
8 (finding that by asking jurors whether they agreed with court's
statement of verdict, court erred because form of poll failed to
"ensure that each juror express[ed] concurrence or disagreement"
and failed to "reveal coercive deliberations"). A poll that produces
"a mere chorusing of what has already been announced," will not
adequately safeguard a defendant's right to a unanimous verdict.
*State v. Holloway,* 106 *N.M.* 161, 740 *P.*2d 711, 715 (Ct.App.)
(internal quotation marks and citation omitted), *cert. denied,* 106
*N.M.* 405, 744 *P.*2d 180 (1987). Thus, the juror's concurrence with
the verdict at the time of the poll is at least as important as the
juror's agreement in the jury room. *See Bruce v. Chestnut
Farms–Chevy Chase Dairy,* 126 *F.*2d 224, 225 (D.C.Cir.1942)
(instructing that trial courts "should bear in mind that a good and
valid verdict is not dependent on what the juror agrees to in the
jury room, but what the juror agrees to when the jury returns into
court to give [its] verdict").

The question raised in this case is whether the poll, in
fact, disclosed that the jurors unanimously concurred with the
verdict. The State argues that we should accord considerable
deference to the trial court's determination that when polled, all of
the jurors, including Juror No. 8, unanimously assented to the
decision announced by the foreperson. We agree with the State
that the trial court has broad discretion in determining whether a
juror's response reflects agreement with the verdict. *Cf. United
States v. Fiorilla,* 850 *F.*2d 172, 176 (3d Cir.) (clarifying that under
federal rules of procedure trial court has discretion in assessing
whether juror assented to verdict), *cert. denied,* 488 *U.S.* 966, 109

*S.Ct.* 492, 102 *L.Ed.2d* 529 (1988). Because the trial court has the benefit of hearing a juror's answer and personally observing a juror's demeanor, it is in the best position to ascertain whether hesitancy or equivocation on the part of a juror reflects involuntary or coerced assent. *Ibid.* However, in exercising its discretion, the trial court has a duty to eliminate all doubt about the unanimity of the verdict to effectuate the poll's essential purpose of ferreting out coerced decisions. As we have noted in the past, in "ascertain[ing] the fact of individual concurrence," the trial court must take "[p]recautions [during the poll] to eliminate *any doubt* as to the precise nature of the verdict. . . . " *State v. Butler,* 27 *N.J.* 560, 608–09, 143 *A.*2d 530 (1958) (emphasis added).

## B.

Before reaching the ultimate question in dispute, we address the related issue of whether a juror's final expression of concurrence eliminates doubt stemming from that juror's prior equivocation, hesitation, or apparent reluctance.

Although *Rule* 1:8–10 contemplates a clear response to the poll, jurors often vary from the standard responses of "yes" and "no" or "guilty" and "not guilty." Both the comment to the Rule and prior decisions of this Court recognize that an unorthodox response "is sufficient if the answer is given in such a manner as to *leave no doubt* as to the *nature and intention of the response.*" Pressler, *Current N.J. Court Rules,* comment on *R.* 1:8–10 (2004) (emphasis added); *Vaszorich, supra,* 13 *N.J.* at 127, 98 *A.*2d 299 (noting that "[t]he required assent of each juror to the correct verdict rendered by the foreman need not be in formal or literal style, provided only that it be unmistakable in meaning"). However, when a response reflects confusion or equivocation, trial courts ought to "seek clarification so that the juror will be required to give a responsive answer." Pressler, *supra,* comment on *R.* 1:8–10.

The Appellate Division in this matter determined that the trial court properly concluded that based on Juror No. 8's ultimate

expression of concurrence, further questioning was unwarranted. Relying on our decision in *State v. Schmelz, supra,* the panel explained:

> In our view, whether juror # 8 initially said or mouthed "not guilty" is not determinative of the validity of the verdict. What is determinative is that she eventually agreed unequivocally with the verdict as announced by the foreman. The judge had no duty to conduct a further inquiry after her unequivocal concurrence.
>
> In *State v. Schmelz,* Chief Justice Vanderbilt speaking for a majority of the Supreme Court observed that "if it clearly appears that the juror concurs in the verdict any evasive statement or explanation volunteered by [the juror] is to be disregarded." Here, all witnesses at the motion hearing testified that juror # 8 answered "guilty" as to count two when polled by the judge. In view of that fact, we perceive no abuse of discretion in the judge declining to continue to question juror # 8.
>
> [ (Internal citation omitted).]

Although that reasoning is logically sound, a review of the underlying facts in *Schmelz* persuades us that the panel in the present appeal applied with too broad a brush our comment in *Schmelz* that "any evasive statement or explanation volunteered by [the juror] is to be disregarded." *Schmelz, supra,* 17 *N.J.* at 233, 111 *A.*2d 50.

In *Schmelz,* a dispute over the unanimity of the verdict arose from the following exchange during the jury poll:

> CLERK: [T]he verdict as announced by the Foreman is as follows: We find the defendant guilty as charged. Is that your verdict? Answer yes or no.
>
> [JUROR]: Sir, your Honor please, the Court may I ask a question as I see fit or answer yes or no?
>
> COURT: The question is very clear and simple, ... and you will have to answer it directly in response to the Clerk's question.
>
> [JUROR]: Yes.
>
> . . . .
>
> COURT: ... [M]ay I ask one question of you and please answer me very directly. Was there some explanation that you wanted to make as to your finding of your verdict?
>
> [JUROR]: So far as the verdict is concerned—
>
> COURT: Please answer me directly and you may answer yes or no. Was there an explanation which you wanted to make?
>
> [JUROR]: I would call it so, sir, your Honor.
>
> COURT: Record the answer as yes.

[*Id.* at 232, 111 *A.*2d 50.]

On appeal, the defendant claimed that the trial court should have allowed further interrogation of the juror to determine whether he in fact concurred with the verdict. *Ibid.* We dismissed that argument based on our finding that the juror had unequivocally assented to the verdict. *Id.* at 236, 111 *A.*2d 50. We noted that the juror "admitted to the court that his question had to do with an 'explanation' as to the finding of his verdict." *Ibid.* Because that explanation bore on a conclusion that the juror already had reached, we determined that no further questioning was necessary given his clear concurrence with the verdict. *Ibid.*

In reaching our holding in *Schmelz,* we distinguished *Solar v. United States,* 86 *A.*2d 538 (1952), in which the Municipal Court of Appeals for the District of Columbia reversed a conviction based on a trial court's failure to clarify a juror's response. The dispute in *Solar* arose from the following exchange between a juror and the court:

JUROR: May I know the reason for [the poll]? You see, I'm sorry, but what do you mean? Is what I did, the question?

COURT: Have you not decided whether or not this man is guilty or innocent?

JUROR: I said not guilty. I said not guilty and I changed it to guilty in a way. Is that what you mean?

COURT: No; that is not what I mean. You went in the jury room and when you decided this issue, did you decide this man was guilty or not guilty.

JUROR: Guilty, I suppose.

[*Id.* at 539–40.]

Without questioning the juror further, the trial court recorded the verdict as guilty. *Ibid.* On appeal, the Court of Appeals reversed the conviction, finding that the juror's final statement, "Guilty, I suppose[,]" did not eradicate the doubt created by the juror's initial response, but further emphasized the juror's uncertainty. *Id.* at 540. In distinguishing the circumstances in *Solar* from the facts before us in *Schmelz,* we described *Solar* as representing "a clear instance of confusion on the part of the juror and certainly it was not clear as to how she had voted." 17 *N.J.* at 236, 111 *A.*2d 50.

As *Solar* demonstrates, a juror's final response indicating assent with the verdict may not eradicate all doubt created by prior ambiguous or evasive answers. Viewing our *dictum* in *Schmelz* that "any evasive statement or explanation volunteered by [a juror] is to be disregarded" in light of our discussion of *Solar*, it becomes clear that we did not intend for polling courts to disregard all extraneous remarks. Rather, we interpret that comment to mean that a trial court first must clarify the nature and intention of a juror's otherwise equivocal or ambiguous response before disregarding prior statements that may bear on the meaning of the juror's final answer. However, when confronted with an unorthodox reply that suggests lack of unanimity, efforts to elicit clarification about the intended meaning of that response must not delve into the mental processes that the juror has undertaken in reaching his or her ultimate verdict. *Accord Bruce, supra,* 126 *F.*2d at 225 (noting that during polling process "[i]t is both unwise and undesirable that the court . . . require an explanation of [a juror's] change of position").

We recognize that there is authority supporting the Appellate Division's reasoning that a final expression of concurrence cures any doubt created by an initial ambiguous response. *See, e.g., United States v. McClintock,* 748 *F.*2d 1278, 1293 (9th Cir.1984) (relying on trial court's appraisal of juror's response as reflecting concurrence even though juror initially asked if she could speak before responding and, after long pause, finally expressed agreement), *cert. denied,* 474 *U.S.* 822, 106 *S.Ct.* 75, 88 *L.Ed.*2d 61 (1985); *Roy v. Star Chopper Co.,* 584 *F.*2d 1124, 1136–37 (1st Cir.1978) (finding that court properly accepted juror's concurrence with verdict despite juror's attempt to ask question before responding), *cert. denied,* 440 *U.S.* 916, 99 *S.Ct.* 1234, 59 *L.Ed.*2d 466 (1979); *Johnson v. United States,* 470 *A.*2d 756, 760 (D.C.1983) (finding that trial court acted reasonably when it determined that juror's response "Guilty, I guess[,]" reflected unequivocal agreement with verdict). However, the important policies undergirding the right to poll are better served by acknowledging that in some circumstances a final statement of assent will not remedy doubt

created by an initial ambiguous response. *See, e.g., United States v. Edwards,* 469 *F.*2d 1362, 1367 (5th Cir.1972) (finding that trial court erred in accepting juror's statement that announced verdict was her verdict without inquiring into initial remark that she was "still in doubt"); *United States v. McCoy,* 429 *F.*2d 739, 741–42 (D.C.Cir.1970) (reversing defendant's conviction based on finding that juror's response, "yes, with a question mark," left doubt about unanimity of verdict that was not cured by court's demand for "yes" or "no" reply); *State v. Pyatt,* 300 *Mont.* 25, 1 *P.*3d 953, 955–56 (2000) (finding reversible error in trial court's acceptance of juror's final statement, "I did vote in favor of the majority in the end," because prior remarks reflected that, at time of polling, juror did not agree with verdict); *Holloway, supra,* 740 *P.*2d at 716 (reversing conviction based on trial court's failure to clarify juror's initial question about whether she could qualify her concurrence with verdict). As many authorities recognize, the certainty of full concurrence with the verdict remains the touchstone of a valid poll.

■ The circumstances of each case are unique, and thus a bright-line rule for determining whether a juror has concurred fully with the verdict is neither reasonable nor desirable. However, because the primary purpose of the poll is to reveal coerced decisions, a trial court faced with an uncertain or hesitant juror must elicit a clear response by using measures that afford the juror an opportunity to express freely his or her present state of mind about the verdict. The precise methodology to be used is less important than the fact that the poll ensures that a juror's concurrence with the verdict is devoid of any ambiguity or coercion.

### III.

### A.

■ We now apply the foregoing principles to determine whether Juror No. 8's response to the poll on Count Two placed

the unanimity of the guilty verdict on that count in doubt. Defendant maintains that by failing to clarify whether the juror actually said "not guilty," either during the polling or at the hearing on defendant's motion for a new trial, the trial court failed to determine whether the juror's final concurrence with the verdict was voluntary. In response, the State claims that we should accord deference to both the trial court's finding that Juror No. 8 "categorically concurred in the verdict" and its determination that additional questioning was unwarranted.

The key facts at the core of this dispute are as follows. When asked, "[W]hat is your verdict on Count Two?," Juror No. 8 paused for fifteen seconds before responding, "Do you want me to tell [the truth?]" After a brief exchange, the court tried to clarify the question, commenting, "How—how you voted, yes, Ma'am?" When ten seconds passed with no response, the trial court told the juror that the "[f]oreperson indicated the jury was unanimous." The court continued, "We're trying to confirm that the—that the verdict was unanimous. That's the purpose of this, Ma'am. Was your—was your verdict not guilty or guilty Ma'am?" The juror paused for twenty seconds. At that point the trial court said, "Ma'am, you have to respond." The juror then assented to the verdict, stating, "Um, guilty. That was the verdict that I gave."

Defendant maintains that the critical issue in this case is whether, during one of her prolonged pauses, Juror No. 8 said "not guilty." Although the hearing on defendant's motion for a new trial was intended to resolve that and other questions concerning the verdict, the results of that hearing only underscore the uncertainty about what actually occurred during the poll. In ruling on defendant's motion, the trial court summarized the testimony of the witness and noted that the only witness who was certain that she heard the juror say "not guilty" was the court clerk. The court stressed that, despite its close proximity to the juror, the court never heard the alleged inconsistent response. Without making a specific finding of fact as to whether the juror said "not guilty," the court concluded that, even if she initially

expressed disagreement with the verdict, the court's subsequent questioning confirmed that she voted "guilty." Failure to make a specific finding about whether the juror initially expressed dissent was error. However, that error alone does not control our analysis.

In view of the principles discussed above, we disagree with the trial court's determination that its colloquy with Juror No. 8 provided adequate assurance that she agreed with the verdict. Instead, we conclude that, like *Solar*, this matter falls within the limited class of cases in which a juror's final concurrence with the verdict does not eradicate the uncertainty created by her initial hesitation. Collectively, Juror No. 8's prolonged pauses, her question to the court about whether it wanted the truth, her past-tense expression of concurrence, and the uncertainty about whether she first whispered "not guilty," strongly suggest that she entertained doubt about the verdict announced by the foreperson.

The exchange between the juror and the trial court began with the juror's initial hesitation and her inquiry about whether the court wanted an honest response. At that point, the court should have realized that Juror No. 8 may have harbored doubt about the jury's decision. In view of the absence of confusion when she responded to the poll on the first count, we do not attribute the juror's pregnant pauses when polled on Count Two to any misunderstanding about the polling process. Perhaps she hesitated because she was making her decision at the time of the poll. Or perhaps she paused because she did not feel free to express her disagreement with the announced verdict. Whatever the source of hesitancy, the circumstances required clarification.

Unfortunately, the trial court's attempts to obtain a clear response from Juror No. 8 only heighten our uncertainty about the juror's intentions at the time of the poll. The court explained that the purpose of the poll was to confirm that "the verdict *was* unanimous." Through that explanation, the court improperly implied that the poll serves as a rubber stamp of the announced verdict. The court then amplified this error when it asked the

juror, "[W]as your verdict not guilty or guilty?" By phrasing its question in the past tense and by failing to explain that the poll is intended to determine whether each juror *still assents* to the verdict, the trial court elicited a mere recap of the verdict given in the jury room and failed to afford Juror No. 8 an opportunity to express unequivocally her present thoughts about the verdict. *Cf. Vaszorich, supra,* 13 *N.J.* at 127, 98 *A.*2d 299 (explaining that "[t]o poll the jury means to ascertain by questions addressed to the jurors individually, whether each juror assented, and *still assents,* to the verdict tendered to the court") (citations and internal quotation marks omitted) (emphasis added); *see also People v. Kellogg,* 77 *Ill.*2d 524, 34 *Ill.Dec.* 163, 397 *N.E.*2d 835, 837–38 (1979) (noting that "[i]f a juror indicates some hesitancy or ambivalence in his answer, then it is the trial judge's duty to ascertain the juror's *present intent* by affording the juror an opportunity to make an unambiguous reply as to his *present state of mind ")* (emphasis added). A simple refrain of Juror No. 8's previous decision does not clarify whether she agreed with the verdict voluntarily or, conversely, whether she concurred because she felt coerced or pressured either by other jurors or by the trial court. As a result of that ambiguity, the verdict remains clouded with the very uncertainty that the jury poll is intended to eliminate.

Moreover, when Juror No. 8's final expression of assent is placed in the context of the entire colloquy, her own use of the past tense intimates that at the time of the poll she no longer may have shared in the sentiments of her fellow jurors, notwithstanding the guilty verdict that she gave during the deliberations. Because we are left to speculate about the meaning of the juror's response—"Um guilty. That *was the verdict that I gave."*—we find that the poll on Count Two failed to provide the certainty that is the touchstone of a valid poll. When, as here, a poll leaves room for conjecture about the nature and intention of a juror's response, it cannot be said that the verdict is unanimous.

We recognize that trial courts face a difficult task when confronted with an evasive or hesitant juror. However, in this

matter, the trial court had a number of opportunities to clarify the meaning of Juror No. 8's verdict. During its colloquy with the juror, the trial court should have either posed other questions that would have ensured that Juror No. 8 was not in doubt or tailored its questioning to elicit a response that reflected her present state of mind concerning the verdict. Although the court did not take either of those steps at the time of the polling, it had other opportunities to remedy the problem. For example, when the court learned at the close of trial that Juror No. 8 may have said "not guilty," the court should have interviewed the juror *in camera* to provide her an opportunity to explain her hesitation, unhampered by the pressure that may have undermined the deliberation process. Any of those measures would have obviated the uncertainty that now casts a cloud on the verdict.

In sum, the moment of truth, in both its literal and figurative sense, occurred when the court clerk asked Juror No. 8 for her verdict. The juror's delay in responding and ultimate past-tense concurrence coupled with the post-trial testimony of two assistant prosecutors and the court clerk indicating that the juror first may have said "not guilty" place the unanimity of the verdict on Count Two in doubt. Accordingly, we hold that the trial court abused its discretion in accepting Juror No. 8's statement—"Um guilty. That was the verdict that I gave."—as conclusive evidence of her concurrence with the verdict. Because the fundamental nature of the right to a unanimous verdict requires us to resolve any doubt about the unanimity of the verdict in defendant's favor, we must reverse defendant's conviction on Count Two.

### B.

Defendant contends that doubt about the verdict on Count Two also jeopardizes the verdict on Count Three because of the similarities between the offenses. Count Two charged defendant with possession of a controlled dangerous substance with the intent to distribute. Count Three charged defendant with possession of a controlled dangerous substance with the intent to distribute within

500 feet of property comprising a public-housing facility. The only element distinguishing Counts Two and Three is the location of defendant. Therefore, if Juror No. 8 did not believe that defendant possessed the drugs with the intent to distribute, she also must have had reservations that he intended to distribute the drugs within 500 feet of a public-housing facility. Having been viewed as agreeing with the guilty verdict on Count Two, Juror No. 8 may have resigned herself to concurring with the verdict on Count Three. In view of the overlap between the two offenses, we agree with defendant that a flawed verdict on Count Two precludes us from having sufficient confidence in the unanimity of the verdict on Count Three. Accordingly, we also reverse defendant's conviction on Count Three.

## IV.

In light of our holding on the jury-poll issue, we need not address defendant's excessive-sentence claim. The judgment of the Appellate Division is reversed and the matter is remanded for a new trial on Counts Two and Three.

Justice WALLACE, dissenting.

I respectfully dissent. In my view, the trial judge did not abuse his discretion in the manner he polled the jury.

*Rule* 1:8–10 provides that the jury "shall be polled at the request of any party," and "[i]f the poll discloses that there is not unanimous concurrence . . ., the jury may be directed to retire for further deliberations or discharged." As this Court has explained, "[a] poll ensures that each juror express concurrence or disagreement with the verdict, allows jurors to dissent from the announced verdict, and protects against coercive deliberations." *Ragusa v. Lau,* 119 *N.J.* 276, 279, 575 *A.*2d 8 (1990). The poll requires each juror to answer for himself or herself. The response informs the court whether there is any uncertainty in the verdict announced. *State v. Cleveland,* 6 *N.J.* 316, 322, 78 *A.*2d 560 (1951).

*Rule* 1:8–10 does not provide for any particular procedure in polling the jury. Further, the response of each juror need not be in any "formal or literal style, provided only that it be unmistakable in meaning." *State v. Vaszorich,* 13 *N.J.* 99, 127, 98 *A.*2d 299, *cert. denied,* 346 *U.S.* 900, 74 *S.Ct.* 219, 98 *L.Ed.* 400 (1953). If it appears that the juror's answer is not responsive or demonstrates confusion, then the trial court should seek clarification. *See State v. Schmelz,* 17 *N.J.* 227, 233, 111 *A.*2d 50 (1955). If a juror expresses disagreement with the verdict as stated by the foreperson, the trial court may direct the juror to continue to deliberate or may discharge the jury. *R.* 1:8–10. "[I]f it clearly appears that the juror concurs in the verdict any evasive statement or explanation volunteered by [the juror] is to be disregarded." *Schmelz, supra,* 17 *N.J.* at 233, 111 *A.*2d 50.

In *Schmelz,* the clerk instructed each juror to respond "yes" or "no" when asked individually whether he or she agreed with the guilty verdict announced by the foreperson. *Id.* at 232, 111 *A.*2d 50. During the course of the poll, one of the jurors asked if he could ask a question or whether he simply had to answer "yes" or "no." *Ibid.* The trial court informed the juror that he had to answer the clerk's question, to which the juror said "yes," indicating his agreement with the verdict. *Ibid.* Defense counsel objected, and the court asked the juror whether he had hoped to offer "some explanation" about his finding of the verdict. *Ibid.* The juror responded, "I would call it so." *Ibid.* Then, without providing the juror a chance to give an explanation, the court directed the clerk to record the juror's answer as "yes" and allowed the poll to proceed. *Ibid.* After all the other jurors responded affirmatively, the verdict was recorded and entered against the defendant. *Ibid.*

On appeal, the Court rejected defendant's claim that the trial court should have permitted further interrogation of the subject juror in an effort to determine whether the juror actually concurred in the verdict. The Court emphasized that once the trial court had determined "that the particular juror in question had

concurred in the general verdict, the purpose of the poll had been fulfilled and there was no reason for the court to examine him further." *Id.* at 236, 111 *A.2d* 50. The Court provided the following caveat when a trial court finds a juror who appears to respond negatively to the poll:

> If, however, on the poll it had appeared that as a result of the juror's response in the negative to the question propounded by the clerk the trial court was in doubt whether the juror actually had concurred in the verdict announced by the foreman, the court might have interrogated the juror further in an effort to determine what his vote on the verdict really was. As a result of such interrogation the trial court might have exercised its sound judgment in determining what steps were then to be taken that is, whether the verdict should be recorded because it appeared that actually the juror did concur in it, or whether because of a lack of concurrence the jury should be discharged or returned for further deliberations, R.R. 3:7–9(d) [now *R.* 1.8–10]. Such questioning is in effect a part of the poll and is to be conducted by the court alone and solely for the limited purpose herein stated. . . .
>
> [*Id.* at 236–37, 111 *A.2d* 50 (citations omitted).]

Here, in considering defendant's asserted error, we are aided by the videotape of the proceedings. Thus, in addition to the transcript, we have observed and heard the questions of the trial court and the responses of the juror to the extent the responses were audible and able to be recorded.

The videotape demonstrates that after defendant requested a poll of the jury, the trial court instructed the clerk to poll the jurors on each of the three counts. Each juror responded "guilty" when polled on Count One, possession of a controlled dangerous substance (CDS). On Count Two, possession of CDS with the intent to distribute, when juror number 8 was polled she asked the court if it wanted the truth. The court answered in the affirmative and stated that it needed to confirm that the verdict was unanimous. After some hesitation and the court's explanation that an answer is required, juror number 8 responded, "Um, guilty. That was the verdict that I gave."

In my view, the trial court fairly sought to clarify the juror's response to determine whether she agreed with the verdict. The videotape amply demonstrates that the trial court was extremely patient and, in an even-toned voice, expressed to the juror the need to respond to the poll. The trial court did not coerce or

intimidate the juror for her response, but fairly and politely encouraged the juror to answer whether her vote was not guilty or guilty. Although it would have been preferable for the trial court to follow up and ask if that was also the juror's present verdict [1], the failure to do so was harmless. The juror clearly stated that her verdict was guilty. Thereafter, in the polling of Count Three, possession of CDS with intent to distribute near public housing, each juror clearly responded "guilty."

After the polling of the jury, defense counsel requested the trial court make further inquiry of juror number 8 because counsel believed the juror initially had responded "not guilty" to the poll on Count Two. The trial court replied that he never heard the juror say "not guilty" and that the juror eventually had said "guilty." Defense counsel replied, "okay."

I find no error in the trial court's treatment of defense counsel's request. Even if juror number 8 replied "not guilty" in an unclear fashion, it was incumbent upon the trial court to have the juror clarify any ambiguity in her response. That is precisely what the trial court did.

For those same reasons, the disputed testimony at the hearing on the new trial motion concerning whether juror number 8 was heard to respond "not guilty" in the initial inquiry does not justify a different result. It is obvious that if the trial court never heard the juror say "not guilty," there was no basis to grant defense counsel's request to interview the juror.

Although the trial court did not expressly make findings of fact on the new trial motion, the basis for its holding is evident from the court's restatement on the record of the content of the videotape recording. Consequently, the trial court did not abuse its discretion in denying the unusual request to interview juror number 8.

---

[1] The trial court asked the question in the past tense "Was your verdict not guilty or guilty."

In short, the trial court carefully addressed the juror's failure to give a direct response and waited patiently for the juror to respond to the poll. It is undisputed that after some delay the juror indicated she had voted "guilty" on Count Two. That is enough.

I would affirm the judgment of the Appellate Division.

Chief Justice PORITZ and Justice VERNIERO join in this opinion.

*For reversal and remandment*—Justices LONG, LaVECCHIA, ZAZZALI and ALBIN—4.

*For affirmance*—Chief Justice PORITZ and Justices VERNIERO and WALLACE—3.