**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0816-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DOUGLAS A. LEWIS,
a/k/a DOUG A. LEWIS,

    Defendant-Appellant.

_____

Argued January 29, 2024 – Decided March 7, 2024

Before Judges Sabatino, Mawla, and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 19-04-0485.

Jill R. Cohen argued the cause for appellant.

Nicole Handy, Assistant Prosecutor, argued the cause for respondent (LaChia L. Bradshaw, Burlington County Prosecutor, attorney; Nicole Handy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Douglas Lewis appeals from a judgment of conviction and forty-eight-year sentence for murder, raising the lone question of whether the jury verdict was unconditionally unanimous. We are constrained to reverse and remand for a new trial for the reasons expressed herein.

I.

On March 21, 2017, police were dispatched to Kinsley Road in Pemberton in response to a 9-1-1 call reporting several shots fired and multiple subjects running from the scene. Responding officers found a green Honda parked at the intersection of Kinsley Road and Bush Street. The driver of the car, later identified as Shaquille Williams, was slumped over the center console. Williams had suffered multiple gunshot wounds and was pronounced dead at the scene.

Based on an eyewitness identifying defendant as one of the shooters, officers located defendant at a nearby house and took him to the police department for questioning. During that interview, defendant stated he had been inside his cousin's house at the time of the shooting, he had not handled any guns that night, and he had not seen Williams anytime in the past month. During processing, defendant's hands were tested for gunshot residue. Analysis of the samples showed the presence of gunshot residue on defendant's hands.

A-0816-21

Additional witnesses came forward and gave statements to the police. Defendant was then arrested for Williams' murder. When interviewed a second time, defendant told police he had seen Williams and had spoken with him approximately forty minutes prior to the shooting. He stated he was on or near the porch of his cousin's home when the shooting happened. He explained the results of the gunshot residue test by stating he had shot a gun in the woods with his cousin a day or two before the shooting.

In November 2018, defendant was indicted by a Burlington County Grand Jury on six charges, including the first-degree murder of Williams, N.J.S.A. 2C:11-3(a)(1) and (2). In April 2019, a superseding Indictment, No. 2019-04-0485, was issued against defendant and co-defendant, Brandon A. Clifton, on six charges, including the first-degree murder of Williams, N.J.S.A. 2C:11-3(a)(1) and (2).

Defendant's first jury trial began in February 2020. The jury was unable to reach a verdict on the murder count, but a partial verdict was accepted. The jury found defendant guilty of conspiracy to commit murder and weapons charges and not guilty on aggravated assault of the car's other occupant.

Defendant's retrial on the murder count began in June 2021. Approximately one hour into deliberations, the jury sent a note asking for

3

transcripts of both of defendant's police interviews.  The court informed the jury video recordings of the interviews may be replayed but noted the late hour and the length of the videos.  The court sent the jury back to continue deliberations without the videos, if possible.  Approximately one hour later, the jury sent a note again asking to view the videos.  Two videos were replayed for the jury in the courtroom.

Deliberations resumed, and approximately two hours later, the jury returned a guilty verdict on the lone charge of murder.  The court subsequently polled the jury, where the first six jurors answered in the affirmative when asked whether they agreed with the verdict; however, the seventh juror polled responded, "regrettably agree."[1]  After jury polling was complete, defense counsel asked to be heard at sidebar.  The following discussion then occurred:

> THE COURT:     I'm sure I may anticipate what your interest is, [defense counsel], but go ahead.
>
> [DEFENSE COUNSEL]:     Yeah, Judge.  One of the jurors, I don't know the number.

---

[1] Through the efforts of our appellate clerk's office, we were able to obtain and listen to the CourtSmart audio recording of the jury polling. The recording was shared with counsel, and we gave counsel the option of filing a supplemental submission.  The audio recording shows the juror did not hesitate in responding to the judge's question.  We are mindful that there is no video recording of the proceedings, which might have revealed the juror's facial expression or any gestures.

A-0816-21

THE COURT: I know, said regrettable.

[DEFENSE COUNSEL]: She indicated regrettably I agree. My concern is that I have the feeling that we should explore that.

THE COURT: I understand that, [defense counsel]. There could be a lot of reasons for it. I don't know that I'd be comfortable sort of weighing into the jury deliberations. It could mean that she feels sorry about it, whatever. It could be a lot of things. She could have misgivings but she did say agree.

[DEFENSE COUNSEL]: Yeah, I know that but she may have had improper pressure put on her in the back. All I'm saying, I've never seen that before. I'm alerted to the concern that it's not the last time it's going to be discussed. Whatever you decide is fine with me.

[PROSECUTION]: Judge, my concern is delving into that too far. It may cause problems. They've only been out three or four hours. I don't know how much pressure could be put on in those three or four hours. It could be that she regrets that he's [twenty-one] years old and he's convicted of murder.

THE COURT: Sure. And the jury charge is please do not surrender your convictions to the extent that you hold them simply to reach a verdict. I just think I can certainly understand [defense counsel's] point. It is different but I certainly understand [defense counsel's] point.

[PROSECUTION]: Are you okay with the fact that the defendant can't hear this conversation?

THE COURT: You know what, once they're excused I will re-articulate on the record, you know, make a record of it, if you will.

A-0816-21

[DEFENSE COUNSEL]:      I think that's important.

THE COURT:     Sure.  I'm loath to get into peoples' thought processes and deliberations for understandable reasons, but I certainly understand [defense counsel's] concern and I'll just have to leave it there, quite honestly.  The record is what it is at this point.  All right.

[DEFENSE COUNSEL]:      Thank you, sir.

The court then accepted the guilty verdict.  After the jury was thanked and dismissed, the court placed the following on the record:

THE COURT: . . . As we all heard, candidly very unique and unexpected, that's something that happens with jurors in trials and the like, that one of the jurors in being polled said, regrettably, I agree.  And [defense counsel] rightfully came to sidebar and had some discussions about his desire in wanting to inquire further as to what that meant or whether there could have been some pressure put on that particular juror and the like.

The Court respectfully declined to address her, feeling and believing that it would have been inappropriate delving into the deliberations of the jury.  Suffice it to say that she could have, quite frankly, had some misgivings about her verdict but she did say she agreed.  Or she could have been concerned about a young man being convicted of murder.

6

So there could be a myriad of reasons for that statement. I'm satisfied that there isn't anything that would suggest that they did not follow their instructions about not surrendering their convictions, if they polled them, you know, with some degree of certainty. They should maintain those positions, but don't be afraid to change your position if you're convinced otherwise and, you know, that that causes you to change your opinion one way or the other.

So ultimately, I think the jury performed their job and to sort of single out that juror and necessarily almost have to get into what may be going on in the jury room, why she said what she said, I just think that for reasons indicated that that would not have been a proper line of inquiry under the circumstances.

On September 24, 2021, defendant was sentenced to forty-eight years in New Jersey State Prison, subject to the No Early Release Act, on the murder charge.

On appeal, defendant contends:

POINT I.

THE COURT ABUSED ITS DISCRETIO IN ACCEPTING AN EQUIVOCAL ANSWER WHILE POLLING THE JURY AND NOT QUESTIONING THE JUROR AS TO WHY THEY WERE HESITANT ABOUT THEIR ANSWER.

II.

Article 1, Paragraph 9 of the New Jersey Constitution, Rule 1:8-9, and the Sixth Amendment of the United States Constitution, applicable to the states

through the Fourteenth Amendment's Due Process Clause, and all require a guilty verdict in criminal cases to be unanimous. State v. Macchia, 253 N.J. 232, 252 (2023). Unanimity ensures the jury has reached a "subjective state of certitude" on the details of defendant's conduct, which in turn facilitates the determination of guilt. State v. Parker, 124 N.J. 628, 633 (1991) (quoting United States v. Gipson, 553 F.2d 453, 457 (5th Cir. 1977)).

Jury polling "is to determine whether there is unanimous concurrence in the verdict." State v. Millett, 272 N.J. Super. 68, 95 (App. Div. 1994). The practice is intended to "creat[e] individual responsibility" and "elminiat[e] any uncertainty as to the verdict announced by the foreman." Ibid. (quoting State v. Vaszorich, 13 N.J. 99, 126 (1953)). Determining whether a juror's answer to a jury poll reflects agreement with the verdict is left to the broad discretion of the trial court. State v. Milton, 178 N.J. 421, 432 (2004). Such decisions are reviewed for abuse of discretion, meaning the appellate court will determine whether the decision was "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)). If a juror's answer is not directly responsive to the question asked, but leaves "no doubt as to the nature and intention of the response," then it is

8

sufficient. Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 1:8-10 (2024). However, failure to clarify a juror's hesitant or unclear answer to the jury poll can leave "room for conjecture about the nature and intention of [the] juror's response." Milton, 178 N.J. at 441.

The court must meet its duty to eliminate doubt while still "protect[ing] the confidentiality of jury communications." State v. Ross, 218 N.J. 130, 147 (2014) (describing the court's task in the context of questioning jurors in a substitution procedure). Courts should pose questions "carefully crafted to elicit answers that . . . in no way elicit the drift of the deliberations." State v. Musa, 222 N.J. 554, 569 (2015) (in the context of inquiring about a juror's inability to continue serving for the remainder of a trial). For example, a court maintains the secrecy of deliberations by prefacing any questions with a caution not to reveal such information. See State v. Singleton, 290 N.J. Super. 336, 345 (App. Div. 1996) (observing the trial court prefaced its colloquy with juror by stating, "I don't want you to tell me what you're thinking or what the other jurors are thinking . . . .").

The desire not to delve into deliberations does not relieve the trial court of its other duties with respect to jury instructions and questioning. State v. Johnson, 436 N.J. Super. 406, 426 (App. Div. 2014) (recognizing a judge's

"well-intentioned desire to refrain from interfering unduly in the jury's deliberations," but finding that the failure to properly inquire as to the extent of a jury's deadlock and reinstruct them accordingly possibly denied the defendant a unanimous jury verdict).

Defendant argues the trial court's acceptance of the response "regrettably agree" from a juror, without any further questioning, deprived him of his right to a unanimous jury verdict. Invoking Ragusa v. Lau, defendant maintains jury polling is an important procedural safeguard against circumstances in which a juror has been "coerced or induced to agree to a verdict to which [the juror] has not fully assented." 119 N.J. 276, 285 (1990) (Stein, J., concurring in part and dissenting in part).

Defendant likens this case to Milton, where the Court described a trial court's "duty to eliminate all doubt about the unanimity of the verdict." 178 N.J. at 434. He maintains the juror's response "reflected confusion and hesitation about the guilty verdict," and the trial court refused to clarify due to concerns about improperly delving into "the jury deliberations" and "people's thought processes and deliberations."

In Milton, after a guilty verdict, at the request of defense counsel, the jury was polled on each count. Id. at 427. Each juror clearly stated "guilty" in

response to the poll on count one. Ibid. When polled on count two, one of the jurors "remained silent for approximately fifteen seconds before asking the clerk, 'Do you want me to tell [the truth][?]'" Ibid. (first alteration in original) Then, the following exchange occurred:

> COURT: Ma'am, absolute—I want to know what your verdict is on Count—on Count Two, Ma'am?
>
> JUROR NO. 8: My verdict?
>
> COURT: Yes. How—how you voted, yes, Ma'am.
>
> JUROR NO. 8: [No response]
>
> [Approximately ten seconds pass.]
>
> COURT: Ma'am, the Foreperson indicated the jury was unanimous. We're trying to confirm that the—that the verdict was unanimous. That's the purpose of this, Ma'am. Was your—was your verdict not guilty or guilty, Ma'am?
>
> JUROR NO. 8: [No response]
>
> [Approximately twenty seconds pass.]
>
> COURT: Well, Ma'am, you have to respond.
>
> JUROR NO. 8: Um, guilty. That was the verdict that I gave.
>
> [Id. at 427-28 (bracketed material was added in the Court's opinion).]

After the court's final remarks to the jury, defense counsel asked the court to conduct an in-camera hearing with the juror, which the court denied. Id. at

11

428. The defendant moved for a new trial, and at a hearing on that motion, both the defendant and the State called witnesses who had been present for the polling and testified to the juror's demeanor and words. Ibid. Based on this testimony, defense counsel argued "doubt remained about the meaning of [the juror's] final answer," and requested a new trial or, in the alternative, that the court interview the juror. Id. at 430. The trial court denied both, reasoning, "[i]t is not the [c]ourt's responsibility to go on a hunting expedition to make inquiries into something that may not exist. The juror was given the opportunity to tell the [c]ourt either guilty or not guilty. She clearly said guilty." Ibid. (alterations in original). Milton appealed his conviction and sentence, and we rejected his challenges. Ibid.

Our Supreme Court reversed, finding the key purpose of the jury poll is to determine whether each juror "still assents[] to the verdict tendered to the court" by the foreperson. Id. at 433-34 (quoting Vaszorich, 13 N.J. at 127). The Court acknowledged a trial court "has the benefit of hearing a juror's answer and personally observing a juror's demeanor," and held "[the trial court] is in the best position to ascertain whether hesitancy or equivocation on the part of a juror reflects involuntary or coerced assent." Id. at 434. However, the Court stressed that in exercising its discretion a trial court must "eliminate any doubt as to the

12

precise nature of the verdict." Ibid. (quoting State v. Butler, 27 N.J. 560, 608-09 (1958)). Further, the Court held a final expression of concurrence with the verdict does not necessarily eliminate concerns about unanimity raised by earlier expressions of hesitation or reluctance. Ibid.

The Milton Court described additional steps a trial court should take when confronted with a juror's hesitation in responding to a jury poll, namely, to "pose[] other questions that would have ensured that [the juror] was not in doubt or tailor[] its questioning to elicit a response that reflected her present state of mind concerning the verdict." Id. at 442. Failure to "obviate[] the uncertainty that . . . casts a cloud on the verdict" was found to have been an abuse of discretion requiring reversal of the defendant's conviction. Ibid.

Here, the court correctly found the juror's response to the jury polling was ambiguous, stating, "It could mean that she feels sorry about it, whatever. It could be a lot of things." The court also thought the juror's response could have indicated uncertainty, stating, "Suffice it to say that she could have, quite frankly, had some misgivings about her verdict." Because the juror's response indicated ultimate concurrence, the court was tentative to eliminate the doubt as to jury unanimity. However, the Milton Court stated that we had "applied with too broad a brush [their] comment in Schmelz that 'any evasive statement or

13

explanation volunteered by [the juror] is to be disregarded.'" 178 N.J. at 435 (quoting State v. Schmelz, 17 N.J. 227, 233 (1955)). The Court further stated, "[W]e did not intend for polling courts to disregard all extraneous remarks. Rather . . . a trial court must clarify the nature and intention of a juror's otherwise equivocal or ambiguous response before disregarding prior statements that may bear on the meaning of the juror's final answer . . . ." Id. at 437.

This case is factually distinguishable from Milton in that the juror's response did not follow an extended hesitation, and the court here did not engage in questioning that cast further doubt on the juror's present-tense concurrence with the verdict announced by the foreperson. However, defense counsel's request could have been accommodated in the ways suggested by the Milton Court without inappropriately delving into the jury's deliberative processes.

We have no doubt the judge had the same "well-intentioned desire" to refrain from intruding on the jury's deliberations as described in Johnson, and like the Ross Court, we acknowledge the trial court's obligation to protect that confidentiality can be "complicated." However, given the record and the

constitutional issues at stake, to eliminate any doubt as to the unanimity of the verdict, we are constrained to vacate the conviction and remand for a new trial.[2]

Vacated and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] We respectfully decline the State's suggestion that, before ordering any new trial, we should direct that the former juror be located and interviewed. Over four years have passed since that citizen's jury service was completed, and it is speculative that such an effort would be productive.

A-0816-21